# BARBOGLIO et al. v. GIBSON et al.

No. 3797.   Decided February 10, 1923.   (213 Pac. 385.)

1. HIGHWAYS—FINDING OF EXISTENCE OF PUBLIC ROAD JUSTIFIED.
A finding that a road, changed by a railroad company construct-
ing its track into a canyon under the grant made by Comp.
Laws 1917, § 1234, was a public road *held* justified, though no
easement had been conveyed by the landowners, it appearing
that road had been extensively traveled by the public and that
public funds had been expended for repairing it.[1]

2. EMINENT DOMAIN—LANDOWNER SUFFERING INJURY DISTINCT
FROM THAT OF GENERAL PUBLIC MAY MAINTAIN ACTION THEREFOR.
Where, by the construction of a railway into a canyon and the
change of the highway under the right granted by Comp. Laws
1917, § 1234, the owner of land suffers peculiar injury, distinct
from any injury to the general public, he can maintain an ac-
tion against the railway company for his damages.

3. RAILROADS—STATUTE GRANTING RIGHT TO ENTER ON HIGHWAY IN
CANYON NOT RESTRICTED BY STATUTE REQUIRING CONSENT.   The
right of a railroad company, under Comp. Laws 1917, § 1234, to
construct its track on a highway in a canyon on reconstruc-
tion of the highway is not restricted by section 1400x24 pro-
viding that county commissioners have no authority to change
the location of the highway without petition of the freeholders,
or section 1231 providing that railroads shall not use highways
without the consent of county authorities, but the company has
the right to enter on the highway when it has constructed a
new roadway.

4. RAILROADS—COMPANY NOT JUDGE OF COMPLIANCE WITH STATUTE
REQUIRING RECONSTRUCTION OF HIGHWAY.   Under Comp. Laws
1917, § 1234, providing that a railroad company entering on a
public road in a canyon shall cause the road to be reconstruct-
ed in the most favorable location, the company cannot be the
judge of when it has complied with the statute.

5. EMINENT DOMAIN—INJUNCTION DENIED, WHERE REMEDY AT LAW
ADEQUATE.   Where public convenience requires the construction
of a railroad on a highway in a canyon, under the right granted
by Comp. Laws 1917, § 1234, and there is a remedy at law for

---

[1] *Wilson* v. *Hull*, 7 Utah, 90, 24 Pac. 799; *Schettler* v. *Lynch*, 23
Utah, 305, 64 Pac. 955; *Morris* v. *Blunt*, 49 Utah, 243, 161 Pac. 1127.

damages sustained by a property owner from the change in the construction of the highway, injunction will not lie to have the obstruction removed.

Appeal from District Court, Seventh District, Carbon County; *Dilworth Woolley*, Judge.

Action for injunction by Joseph Barboglio and others against A. E. Gibson and others, County Commissioners of Carbon County, and another. From a judgment for plaintiffs against defendant Utah Terminal Railway Company, it appeals.

REVERSED AND REMANDED, WITH DIRECTIONS.

*Martineau & Evans*, of Salt Lake City, for appellant.

*Price & Foutz*, of Price, for respondents.

GIDEON, J.

The respondent Joseph Barboglio is the owner of certain real property located in Spring Canyon, Carbon county. The other respondents are his lessees, This action is to restrain appellant, the Utah Terminal Railway Company, from obstructing a public highway and to have removed the embankments supporting appellant's railway along said highway; also to have appellant required to replace the road in as safe and convenient a condition for travel as it was prior to the building of the railway. The plaintiffs also seek to have the remaining defendants, county commissioners of Carbon county, enjoined from suffering or permitting said railway to occupy the county road in the manner as alleged in the complaint.

The respondents had judgment in the district court against the appellant, railway company, directing that said company refrain from in any way interfering with, or occupying any part of, the public road at or near the premises of the respondents and that it, within 60 days, remove suf-

ficient of its roadbed, tracks, and embankments between certain points designated in the judgment for a distance of approximately 1,200 feet, and that it make the said public road safe and convenient for travel between such points along the location of such road as the same had been before being entered upon by appellant. No judgment was entered against the county commissioners.

The pleadings are lengthy, but for a determination of the questions presented by appellant it is not necessary to attempt to state the contents in detail.

Appellant interposed a general demurrer to the complaint, alleging that the same does not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer, and that ruling is assigned as error. We are of the opinion that the allegations of the complaint are sufficient to withstand a general demurrer.

There is little dispute as to the facts. The appellant, railway company, is a corporation organized under the laws of this state, and the object or purpose of its incorporation was to construct and operate a railway for a distance of $3\,^{7}/_{10}$ miles in Spring Canyon, Carbon county. The repondent Joseph Barboglio owns a tract of land, at this time consisting of about $2\frac{1}{2}$ acres, in said canyon, and the highway in question formerly extended through this tract of land. There were several buildings located on the land abutting on the highway. The other respondents were tenants of Barboglio and were conducting mercantile businesses of different kinds in those buildings. Spring Canyon extends westward near the town of Helper into the mountains a distance of approximately ten miles. Located in said canyon, and on either side of it, are some five or six coal mines operated by separate companies. The Denver & Rio Grande Railroad Company, the owner of the main line running through the town of Helper, had extended into this canyon a single-track railway. That railway could not, or did not, furnish the required accommodations to remove the coal from the several mines located in the canyon. As a result of that condition, the appellant, Utah Terminal Railway

Company, was organized and constructed a line into the canyon.

It appears that prior to the development of the coal mines there was practically no roadway into the canyon, nor was there any necessity for one. As the coal mines were developed, small villages of mine employés were established at or near the several mines.

It is the contention of appellant that the court was not justified in finding that the road occupied by appellant ever was a public highway. It is true that the landowners never at any time conveyed to the county or to the state by deed or grant any title or easement to the land over which the roadway had been constructed. That, however, was not necessary to establish a public road. The testimony of one of the commissioners is that in the year 1916 or 1917 the commissioners of Carbon county established the road; that the respondent Joseph Barboglio, who at the time owned additional land in said canyon, granted a right of way over such land for a public road. It is in evidence also that one of the respondents contributed money to the building of the roadway. It is shown that since that date the commissioners of Carbon county have expended public funds in repairing and maintaining the roadway; that in 1919 the electors of the county authorized a bond issue to construct and repair the public roads of the county; that a large percentage of the money realized from the sale of this bond issue was expended in repairing the public highway through this canyon; that the road had been extensively traveled by the public.

The finding of the court that the road in question was a public road is amply supported by the testimony as measured by the rules stated in former decisions of this court. *Wilson* v. *Hull*, 7 Utah, 90, 24 Pac. 799; *Schettler* v. *Lynch*, 23 Utah, 305, 64 Pac. 955; *Morris* v. *Blunt*, 49 Utah, 243, 161 Pac. 1127. See, also, 1 Elliott, Roads and Streets (3d Ed.) § 168.

That the canyon into which this road extends falls within the intent or definition of the words ''canyon, pass, or defile,'' as used in Comp. Laws Utah 1917, § 1234, does not,

in our judgment, admit of doubt. Reference will hereinafter be made to this section.

The accompanying sketch will aid the reader to understand the location of the respondents' land to the public highway as it existed, and the point where the appellant's railway intercepts that highway.

The canyon extends westward into the mountains. There is no outlet from the canyon leading into any other valley or settlement westward. It is a cul-de-sac. The old county wagon road as well as the new county wagon road is indicated on the foregoing sketch by heavy lines. The railroads and spurs are indicated by the center lines of the tracks. The embankment supporting the track of appellant's railway where the same crosses the old highway at the point D north or northwest from respondents' land is approximately 10 feet high and effectually prevents any travel coming out of the canyon passing along the old county roadway in front of respondents' premises. In addition there has been constructed, as indicated on the sketch, a spur track between respondents' land and the main line of the railway, thereby rendering traffic along the old county road practically impossible.

Respondents' land is not valuable for agricultural purposes. It is valuable only as the same can be used for business purposes. It is located near the Peerless coal property and but a short distance east of the town of Peerless. Its value for business purposes is dependent very largely upon

the convenience of ingress to and egress therefrom.
That the construction of this railway has decreased 2
the value of this land seems to be self-evident. Re-
spondents, therefore, by the obstruction of the old highway,
suffer peculiar injury, distinct from any injury the general
public might suffer, and, for such reason, under all the au-
thorities, the owner of the property at least would be entitled
to maintain an action for such damages as he may have sus-
tained. *Heinrich* v. *City of St. Louis,* 125 Mo. 424, 28 S. W.
626, 46 Am. St. Rep. 490; *Buhl* v. *Ft. St. Union Depot Co.,*
98 Mich. 596, 57 N. W. 829, 833, 23 L. R. A. 392; *Arizona
Copper Co.* v. *Gillespie,* 12 Ariz. 190, 100 Pac. 465; *O'Brien*
v. *Central Iron & Steel Co.,* 158 Ind. 218, 63 N. E. 302, 57
L. R. A. 508, 92 Am. St. Rep. 305; *Osborne* v. *Mo. Pac. R.
R. Co.,* 147 U. S. 248, 13 Sup. Ct. 299, 37 L. Ed. 155; *State
of Pennsylvania* v. *Wheeling, etc., Bridge Co.,* 13 How. 518,
14 L. Ed. 249; 3 McQuillin Mun. Corp. §§ 1382, 1408.

For a determination of their respective rights, the parties
rely upon Comp. Laws Utah 1917, §§ 1400x24, 1231, and
1234. Section 1400x24 provides that the county commission-
ers in each county have jurisdiction and power:

"To lay out, maintain, control, erect, and manage public roads,
turnpikes, ferries, and bridges within the county outside of incor-
porated cities; provided, that the board shall not change or alter
the location of any public highway that has had public money or
poll tax expended upon it, unless a petition signed by a majority
of the freeholders of the precinct wherein such change is proposed
ask for such change; nor shall the board declare any road not a
public highway that has had money appropriated and expended
upon it by act of the Legislature of the territory or of the state
of Utah, without the consent of the Legislature."

Section 1231 reads:

"No railroad shall use any road, street, alley, or highway within
any county, city, or town, except with the consent of the authori-
ties of such county, city, or town, as provided by law; provided, that
this section shall not be construed to prevent railroads from cross-
ing at right angles, or as nearly as may be, any street, alley or
highway across which its located line may pass."

Section 1234, so far as material here, provides:

"Any railroad company whose right of way, or whose track or

roadbed upon such right of way, passes through any canyon, pass, or defile * * * shall not cause the disuse of any wagon or other public highway now located therein, nor prevent the location through the same of any such wagon road or highway where such road or highway may be necessary for the public accommodation; and where any change in the location of such wagon road is necessary to permit the passage of such railroad through any canyon, pass, or defile, said railroad company shall, before entering upon the ground occupied by such wagon road, cause the same to be reconstructed at its own expense in the most favorable location, and in as perfect a manner as the original road; provided, that such expenses shall be equitably divided between any number of railroad companies occupying and using the same canyon, pass, or defile."

The first section quoted is in the chapter enumerating the powers of county commissioners. The other sections are found in the chapter relating to railroad corporations.

It is admitted that the freeholders in the precinct did not, by petition or otherwise, ask a change in the location of the highway. It is therefore argued by counsel for respondents that the county commissioners had no authority, without such petition, to consent to or direct a change in the location of the county road. It is also claimed that the record fails to show that the county ever gave appellant permission to enter upon the public road in question to construct this railway. Section 1400x24 is a limitation of the general powers of the county commissioners over the public roads within the county to change the location of a highway, in that this cannot be done without the petitions mentioned in that section. If there were no other provisions in the statute respecting the right of a railroad to construct its track along a public highway, there would be much force to respondents' contention. Section 1231 is apparently a limitation or restriction of the right of a railroad company to build its track on a highway or street without permission of the authorities. That section, by implication at least, negatives the construction of section 1400x24 claimed by respondents, in that it gives the right to county commissioners to grant a railroad company the privilege of going upon a highway in the construction of its tracks. Section 1234, in our judgment, grants a railroad company certain privileges to construct its track upon a

highway in a canyon, pass, or defile, and that right is
not restricted or limited by the provisions of either     3
section 1400x24 or 1231.   The right given a railroad
company by section 1234 is restricted only by the provisions
of that section.   In other words, the railroad company is not
authorized or permitted to enter a highway in a canyon,
pass, or defile until it has, at its own expense, constructed an-
other highway equally convenient to the public as the one
obstructed.   This conclusion is supported by the opinion of
the court in *Board of Supervisors* v. *Norfolk & W. Ry. Co.,*
119 Va. 763, 91 S. E. 124.   See, also, *Montana Cent. Ry. Co.*
v. *Helena & R. M. R. Co.,* 6 Mont. 416, 12 Pac. 916.

Railways are a necessity and render public service.   In
these mountainous regions the agricultural valleys are con-
nected by narrow canyons.   The valuable minerals are fre-
quently found in locations where the only means of ingress
and egress is through narrow passes or canyon defiles.   The
same condition exists so far as the construction of trans-
continental railways is concerned.   It is therefore frequently
necessary, in the construction of these means of transporta-
tion, not only to utilize the existing roadways, but much of
the space found in these narrow canyons.   Railroad com-
panies, in the operation of trains, cannot make short curves
or leap from one advantageous position to another.   In the
very nature of things, in laying out and constructing a rail-
way through a canyon or defile, consideration cannot be
given alone to the location of the road at any particular
point, but it must be located, to be of practical use, so that
it can be safely operated through the entire canyon or defile.
The Legislature is presumed to have been cognizant of these
facts at the time of enacting the legislation in question, and
must have intended by such legislation to define and grant
rights which would not delay or prohibit the construction
of these necessary means of transportation.   By so constru-
ing these enactments, no arbitrary or unreasonable authority
is given to railway companies.   By section 1234 it is provided
that the

"railroad company shall, before entering upon the ground occupied

by such wagon road, cause the same to be reconstructed at its own expense in the most favorable location and in as perfect a manner as the original road."

The railroad company cannot be the judge of when it has complied with the provisions of that statute. That matter should be left to the county commissioners **4** by virtue of their general control over county roads.

The county commissioners, defendants in this action, are not complaining that the county road constructed by the appellant does not measure up to the requirements of that section. In their answer they deny that they had given permission, or would give permission to occupy the county road until the appellant had constructed another road equally as convenient to the public as the one over which the railroad company had laid its tracks. In addition, in our judgment, the testimony in this case conclusively establishes the fact that the county commissioners were advised of the contemplated change, although it does not appear that any formal action was taken authorizing the railroad to enter upon the county highway. In a letter dated September 1, 1920, signed "Board of County Commissioners by H. C. Smith, County Clerk," which was addressed to the appellant, that company was advised that the fact had been called to the attention of the commissioners that the company contemplated constructing a line of railway in Spring Canyon and that the route of that line of railway would conflict with the then used wagon road. That letter concluded as follows:

"This is to notify you that you will not be permitted to tear up any part of the present county road, until you have constructed another road equally as good and acceptable to the board of county commissioners."

The engineer for appellant testified that after receipt of that letter the county surveyor of Carbon county went with him over the proposed change in the county highway and made certain suggestions, which were complied with. It is also the testimony of this same witness that the county commissioners, or, at least, some of them, went over the route, noted fully what changes were being made, and the nature and location of the new wagon road as constructed by appel-

lant. No objection on the part of these officials appears any-
where in the record that the provisions of section 1234 were
not complied with.

There is much testimony tending to show that a change
in the location of the railway at a point adjacent to respond-
ents' land would make such railway, if not wholly useless
for the purposes for which it was constructed, at least de-
cidedly inconvenient. It is further shown that the cost of
constructing the track at any other point, and at the same
time leave the operation of the line so that it would accom-
modate the public and the coal companies, would be practi-
cally prohibitive. The engineer of appellant testified that
construction of the railway was begun in August, 1920; that
in re-establishing or rebuilding the county roadway there
had been expended approximately $30,000. This action was
instituted on April 21, 1921. It also appears that at the
date of the trial the entire railway, with the exception of
1,200 feet along the highway near plaintiffs' land, was com-
pleted. The public desiring to use this railway would of
necessity be inconvenienced by delay in its construction. By
reason of these facts, and particularly in view of the
fact that respondents have a remedy at law for any
damages sustained, the right of the court to issue a
permanent injunction is questionable, even if no right to
enter upon the roadway were given the railway company
by section 1234, supra.

The following language used by the Supreme Court of
Indiana, in *Oler* v. *Pittsburgh, C., C. & St. L. Ry. Co.*, 184
Ind. at page 440, 111 N. E. at page 622, is pertinent here:

"Doubtless in some cases of invasion of the right of access in-
junction may be invoked as a remedy. But injunction is the strong
and peremptory arm of the court, and the trial court was entirely
within its rights in withholding it in this case. The thing that ap-
pellant sought to stop was part of a work recognized as a public
benefit—the double-tracking of a railroad and the abolition of grade
crossings in the town. It appears that it was well under way at the
time the relief was asked. It was, moreover, a work which it had
statutory authority to do under certain conditions and limitations.
* * * Moreover, as we have seen, appellant had an entirely ade-
quate remedy at law in an action for damages, and this fact is

ample justification for the court's refusal to enjoin appellant.  3 McQuillin on Mun. Corps. § 1413; 1 Lewis on Eminent Domain (3d Ed.) § 212; 2 Elliott on Roads and Streets (3d Ed.) § 1194."

That there may be no misunderstanding as to this court's views, it may not be amiss to recapitulate.  We are of the opinion that the county roadway was a legally established highway through respondents' land; that by the obstruction of that highway the respondents have suffered special injury distinct from that sustained by the general public; that the law affords them a remedy for that injury; that the appellant railway company was in the exercise of a legal right granted to it in entering upon this roadway, whenever it had constructed an additional or new roadway as provided for in the statute.

The respondents asked equitable reilef.  There is a prayer for general relief.  The court therefore acquired jurisdiction and can, and ordinarily should, retain such jurisdiction so as to do justice between the parties.  During the trial, counsel for respondents declined to have the cause referred to the law calendar so as to determine the damages, if any.

We have concluded to, and hereby do, reverse the judgment and remand the cause to the district court of Carbon county, with directions to set aside its judgment restraining the appellant from maintaining and keeping its track upon the old public highway; to permit the parties, if they so elect, to reframe their pleadings so as to make an issue as to the damages and thereafter proceed to try the issue.  If, however, the parties decline to try the issues as to damages, then the district court is directed to enter judgment dismissing the complaint.  Neither party to recover costs on appeal.

WEBER, C. J., and THURMAN and FRICK, JJ., concur.

For the reason that the term of office of Hon. E. E. CORFMAN, who was Chief Justice, expired after the presentation and submission of the foregoing case at the October, 1922, term, and that the opinion was filed after his retirement, his name is omitted from the opinion.