2001 UT 105

Scott C. CARRIER, Hilary Carrier, Barbara S. Carrier, and Sherman W. Clow, Plaintiffs and Appellees,

v.

A. Kent LINDQUIST and Trina Clayton, Defendants and Appellants.

No. 990836.

Supreme Court of Utah.

Dec. 14, 2001.

David J. Bird, Salt Lake City, for plaintiffs.

Craig G. Adamson, Craig A. Hoggan, Cameron S. Denning, Salt Lake City, for defendants.

DURHAM, Justice:

¶ 1 This case arises from a dispute between homeowners about whether a private easement exists in an alley between the homeowners' respective properties. Plaintiffs Scott, Hilary, and Barbara Carrier jointly own property abutting the south side of the alley, and plaintiff Sherman W. Clow owns property next to the Carriers' property, also abutting the south side of the alley. Defendants A. Kent Lindquist and Trina Clayton jointly own a lot abutting the north side of the alley. Claiming ownership over the northern half of the alley, defendants extended their landscaping to that point, completely obstructing 7½ feet of the 15-foot-wide alley. Plaintiffs protested defendants' obstruction of the alley because it inhibited plaintiffs' only access to their properties from the rear. After defendants refused to remove the obstructions, plaintiffs brought suit, claiming a private easement over the entire width of the alley. Both parties moved for summary judgment. The district court granted judgment in favor of plaintiffs and ordered defendants to remove the obstructions and restore the alley to its prior condition. We affirm.

## BACKGROUND

¶ 2 The facts in this case are not in dispute. The alley at issue runs east and west, between and parallel to Eleventh Avenue on the south and Twelfth Avenue on the north, in Salt Lake City. It originally extended a distance of 330 feet, ending at K Street on the west and L Street on the east. The alley was platted and recorded with the city in 1890 as part of the Dunford's Subdivision, and was dedicated to the city for public use. In 1989, the northern portion of the original Dunford's Subdivision was replatted as the Twelfth Avenue Subdivision. The new plat shows the alley just south of the southern boundary of the new Twelfth Avenue Subdivision. A public easement over the entire alley existed from 1890 to 1990.

¶ 3 On August 14, 1990, before any of the parties purchased their respective lots, Salt Lake City passed Ordinance 72, which vacated the eastern 58 feet of the alley. This portion of the alley was subsequently blocked by a shed, preventing access to the eastern portion of the alley. Ordinance 72 also vacated the western 272 feet subject to all existing rights of way and easements. The vacation of the western 272 feet was *conditional*, however, upon all abutting property owners reaching an agreement for joint use and access within one year. The ordinance provided that if an agreement was not reached within the time limit, the vacation of the western 272 feet would be void. Ordinance 72 was recorded, but the abutting landowners did not reach a joint use and access agreement, so the portion of Ordinance 72 that vacated the western 272 feet of the alley was void. Thus, although subsequent plat maps showed the entire alley as vacated on August 14, 1990, the western 272 feet of the alley remained city property.

¶ 4 In May 1992, the Carriers purchased their home on Eleventh Avenue after determining that the alley, as it appeared on the plat map abutting the back of their lot, was still dedicated public property from east of their property all the way west to K Street. In June 1993, Clow purchased his home next to the Carriers on Eleventh Avenue. Clow also purchased with reference to the plat map and understood that he acquired the right to use the alley to access the back of his lot. According to plaintiffs, they relied on having access through the alley because a retaining wall and garage built across the front of the Carriers' property on Eleventh Avenue, and a 38-foot vertical rise from the front to the back of both properties, made land delivery of heavy goods and vehicle access to both backyards impossible from the fronts of the homes. Both the Carriers' deed and Clow's deed refer to the plat map to describe the properties. Clow's deed further states that his property includes "one-half the vacated alley abutting on the north."

After purchasing their lots, the Carriers and Clow openly and regularly used the alley to deliver goods and equipment, as well as for vehicular access to their backyards.

¶ 5 In May 1993, defendants Lindquist and Clayton purchased their lot on K Street. Defendants' side yard abuts the northern side of the alley and extends from K Street for 165 feet. Defendants' deed also referred to the plat map and stated that the property included "half the vacated alley abutting on the south."

¶ 6 In October 1993, defendants obstructed the alley with large mounds of debris from their lot. Plaintiff Clow protested the obstructions and consulted the Salt Lake City Attorney's Office about the alley's status. Assistant City Attorney Bruce R. Baird determined that the conditions of Ordinance 72 had not been met and that the alley was still dedicated city property. Baird informed Clow of his findings in a November 1993 letter. Clow placed a copy of Baird's letter and a copy of Ordinance 72 in defendants' mailbox along with a request to defendants to remove the obstructions. Defendants admit that in November 1993 they received these items. According to defendants, the trash was removed after two weeks.

¶ 7 Eight months later, in July 1994, defendants commenced work on a large rock wall that extended the 165-foot length of their property. The wall was placed down the center line of the alley, 7½ feet from defendants' property line as it appeared on the plat map. Defendants covered the asphalt running down the alley with two to eight inches of soil and filled the northern half of the alley with large boulders, using the alley as a staging area for the wall.[1] Plaintiffs again demanded that defendants remove the obstructions.

¶ 8 After plaintiffs protested the obstruction of the alley, both plaintiffs and defendants had numerous conversations with various Salt Lake City officials during July and August 1994. During these exchanges, both plaintiffs and defendants were given notice

that the alley had not been vacated by Ordinance 72. Defendants therefore petitioned the city to vacate the western portion of the alley. Also during this period, plaintiffs asked the city to require removal of the obstructions, but city officials refused and advised plaintiffs not to file suit against the city until the matter of vacation was resolved. City Attorney Roger Cutler notified Scott Carrier by letter that if the alley was vacated, abutting owners would be free to enclose or use the alley as they pleased. City officials advised defendants that they need not remove the improvements from the alley until the city council had taken action on the petition to vacate the alley. Defendants were further informed that the alley would likely be vacated and that the only easement across the alley was in favor of a utility company. Defendants therefore continued construction of the rock wall, which was completed in August 1994. The rock wall entirely obstructed the northern half of the alley's width, thereby preventing plaintiffs from using the alley as they had previously. The rock wall's completion, therefore, occurred well before the city council took any action to vacate the alley.

¶ 9 Six months later, in February 1995, the city council passed Salt Lake City Ordinance 15, which vacated the western 272 feet of the alley. The vacation, however, remained subject to existing rights of way and easements of third parties. Plaintiffs filed suit in January 1996, claiming a private easement over the entire alley. The district court entered a summary judgment in favor of plaintiffs, granting plaintiffs an injunction requiring defendants to remove the obstructions from the alley and restore the alley to its prior condition. Defendants appeal.

¶ 10 Defendants set forth nine issues on appeal. Because their statement of the issues is duplicative, we address all of defendants' arguments in connection with the following three issues: (1) whether the district court erred in finding that plaintiffs have a private easement over the alley, (2) whether

---

**1.** It is difficult from the record to determine the condition of the surface of the alley prior to the edification of the rock wall. Accordingly, we rely on the trial court's finding regarding this fact, namely that "defendants covered the asphalt running down the [a]lley with two to [eight] inches of soil, then caused numerous large boulders to be placed in the alley in preparation for construction of a large rock wall."

the district court abused its discretion in granting an injunction against defendants to remove the wall and restore the alley, and (3) whether the district court abused its discretion in not applying a balancing of equities analysis and ruling in favor of defendants under that analysis.

## ANALYSIS

### I. EXISTENCE OF PRIVATE EASEMENT

¶ 11 Defendants claim that the district court erred in finding plaintiffs are entitled to a private easement over the alley. The ultimate determination of whether an easement exists is a conclusion of law, which we review for correctness. *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998). However, the existence of an easement is also a highly fact-dependent question; therefore, we accord the trial judge a measure of discretion when applying the correct legal standard to the facts, and overturn a ruling concerning the existence of an easement only if the judge exceeded the discretion granted. *Id.*

*A. Private Easement Based on Plat Map*

¶ 12 Under Utah law, landowners whose property abuts public streets, alleys, and public ways that appear on a plat map are entitled to a private easement over those public ways. In *Tuttle v. Sowadzki*, this court stated:

> No doubt the law is to the effect that purchasers buying lots with reference to a map or plat which is authorized by the owner of the ground, and such map or plat shows that such lots abut upon a street or alley which also is shown on such map or plat to be a street or alley, then, and in such event, the purchasers acquire a right to have such street or alley maintained as such, and the owner of the ground is estopped from vacating or from obstructing the same.

41 Utah 501, 508, 126 P. 959, 962 (1912); *see also Boskovich v. Midvale City Corp.*, 121 Utah 445, 448, 243 P.2d 435, 437 (1952) ("[I]f the dedicated streets of a subdivision are laid

out and right to the use thereof has arisen, a private easement arises therein which constitutes a vested proprietary interest in the lot owners....") (Wolfe, C.J., concurring); *4 Powell on Real Property* § 34.06, at pp. 34–42 (Michael Allen Wolfe ed., 2001) ("Where a conveyance of land ... refers to a map on which spaces for streets, parks, or other common uses are shown ... the conveyee of the land acquires an easement with respect to the street or the areas shown on the map." (footnotes omitted)); *7 Thompson on Real Property* § 60.03(a)(3)(iii), at p. 411 (David A. Thomas ed., 1994) ("[T]hose who have purchased in reliance on the roads shown in a plat or plan retain a private easement....").

¶ 13 At the time the parties purchased their respective properties, the properties were recorded on a plat map, which showed the 15-foot wide alley running 330 feet from K Street to L Street.[2] Plaintiffs' deeds refer to the recorded plat map in describing their properties. When plaintiffs purchased their properties, they relied on the plat map, which showed the alley running behind their lots. Before purchasing, plaintiffs determined that the alley would remain available to access their backyards.

¶ 14 Defendants, whose deed also refers to the recorded plat map, argue that plaintiffs do not have an easement because the recorded plat map actually showed, albeit erroneously, that the alley was vacated before plaintiffs purchased their lots. In *Tuttle v. Sowadzki*, 41 Utah at 512–13, 126 P. at 965, this court held that a plaintiff did not have an easement across an adjoining landowner's property over a platted avenue that had been vacated at the time plaintiff purchased the property. Defendants therefore contend that plaintiffs are not entitled to a private easement because the plat map indicated the public way was vacated at the time plaintiffs purchased their properties.

¶ 15 Unlike this case, however, the avenue in *Tuttle* had been fenced off and landscaped and did not exist as a road at the time plaintiff purchased his property. *See* 41 Utah at 507, 126 P. at 961. In fact, the

---

**2.** As noted above, only the western 272 feet of the alley are at issue because the eastern 58 feet

were legally vacated by Ordinance 72.

avenue had never been used as a public highway and had been vacated and legally abandoned for over ten years. *See id.* In this case, by contrast, the alley had been open for public use for over a hundred years and had not been legally vacated at the time plaintiffs purchased their homes. At the time of defendants' purchase, and up until defendants obstructed the alley, plaintiffs openly and consistently used the alley to access their properties. Notwithstanding the indication on the plat map, defendants were notified in November 1993 that the alley had not been legally vacated-long before they began construction of the rock wall. Ordinance 72, a copy of which defendants admit they received in November 1993, clearly states that the alley would be vacated only *if* the abutting owners reached an agreement on joint use of the alley. Defendants were informed by city officials that no such agreement was ever reached and therefore that under Ordinance 72 the vacation of the western 272 feet of the alley was void. Because the alley had not been legally vacated at the time of plaintiffs' purchase, the trial court was correct in finding that plaintiffs' reliance on the plat map entitles them to private easements over the alley abutting their properties as depicted on the plat map.

### B. Private Easement Over Abutting Public Ways

¶ 16 In addition to plaintiffs' right to an easement by reliance on the plat map, it is clear under Utah law that "a landowner whose property abuts a public road possesses, by operation of law, a private easement of access to that property across the public road." *Gillmor v. Wright*, 850 P.2d 431, 437 (Utah 1993); *see also Mason v. State*, 656 P.2d 465, 468 (Utah 1982) ("[A]n abutting landowner has a private easement of ingress and egress to existing public highways."). In the instant case, plaintiffs' land abutted a public alley, which they used to access their properties. Therefore, as landowners whose property abuts a public way, plaintiffs possess a private easement over the alley.

¶ 17 Defendants nevertheless contend that even if an easement exists over the alley, that easement should be limited to access that is "reasonably necessary" under the circumstances. Defendants rely on *Mason v. State*, in which this court held that a private easement over a road vacated and destroyed by the State extended only insofar as "the alternative access imposed measurable hardship that was unreasonable under the circumstances." *Id.* at 469. Defendants argue that access to the entire 15 foot width of the alley is not reasonably necessary because plaintiffs have primary access to the front of their homes from Eleventh Avenue and because plaintiffs can still access their backyards through the unobstructed 7½-foot portion of the alley.[3]

¶ 18 Defendants fail to note, however, a critical distinction between this case and *Mason*, which involved a conflict between private and public entities. In order for a government to be effective, it needs the power to establish or relocate public throughways, even at the expense of some individual citizens, for the convenience and safety of the general public. *See id.* ("The property owner's right to preserve the status quo on access to and over abutting highways must be qualified by the public interest in relocating public highways for greater advantage at minimum possible cost and in facilitating the return of land to productive purposes.") In fact, cities are vested with the statutory power to "lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets, alleys, avenues, boulevards, sidewalks, ... and may vacate the same ... by ordinance." Utah Code Ann. § 10–8–8 (1999).

¶ 19 No public entity is involved in this case. There is no private right of condemnation, nor is there a need for one. One citizen has no entitlement to another citizen's property or a right to obstruct another citizen's easement. It is a long-held tenet of property law that a servient estate cannot

---

**3.** This fact is irrelevant to our analysis, however, because the reasonable necessity test is not appropriate here, as discussed hereafter. Moreover, it is undisputed that plaintiffs' homes cannot be accessed through the obstructed alley by the type of vehicles, equipment, and materials previously used by plaintiffs and which are necessary for plaintiffs to complete their planned improvements; nor can Scott Carrier use the alley to park his boat in his backyard as planned.

" 'unreasonably restrict or interfere with the proper use of .... [an] easement' ". *Wykoff v. Barton,* 646 P.2d 756, 759 (Utah 1982) (quoting *N. Union Canal Co. v. Newell,* 550 P.2d 178, 180 (Utah 1976)).

¶ 20 We believe that applying the reasonable necessity test to disputes over private easements would give a servient estate the power to obstruct an easement, and then extinguish or limit that easement, by claiming that the easement was not reasonably necessary for the easement holder to access his or her property. Such a result would in essence acknowledge and permit a private right of condemnation. Private easement holders should not be subjected to the burden of defending their existing easements as reasonably necessary.

¶ 21 Here, defendants obstructed the alley over plaintiffs' protests and with full knowledge that the alley remained city property at the time they constructed their rock wall. Defendants now ask the courts to condone their actions based on defendants' view that the alley is not reasonably necessary for plaintiffs' access to their properties. Defendants' actions should not be condoned, and there is no applicable rule of law affording them relief from the consequences of their actions. Accordingly, we conclude that the trial court was correct in finding that plaintiffs hold a private easement over the entire width of the alley because their property abuts a former public alley.

### C. Survival of Private Easement Upon Vacation of Public Way

¶ 22 Defendants next argue that even if a private easement existed over the alley, Salt Lake City Ordinance 15 extinguished plaintiffs' rights when it vacated the alley in February 1995. Defendants assert that if this court allows plaintiffs to retain a private easement over the alley, it will weaken the government's power to act for the public good in vacating public ways and returning land to productive uses. However, in this case, Ordinance 15 clearly states that the alley would be vacated *"subject to "* existing rights of way and easements of private third parties, such as plaintiffs. Thus, according to the ordinance, the alley was vacated subject to plaintiffs' right to use and enjoy it without interference from defendants, and the Ordinance cannot be construed as extinguishing such rights.

¶ 23 Defendants argue, however, that vacating the alley subject to existing easements contradicts Utah law. Defendants fail to cite any controlling authority.[4] In fact, Utah law clearly provides that private rights of way and easements over a public way shall not be impaired when that way is vacated by the governing body. *See* Utah Code Ann. § 10–8–8.5(1999);[5] *see also Gillmor v. Wright,* 850 P.2d 431, 437–38 (Utah 1993) ("A subsequent abandonment of a public right-of-way over [a public] road has no effect on a private easement owned by an abutting landowner."); *Mason,* 656 P.2d at 468 ("[A]n abutting land-

---

**4.** In support of their contention, defendants cite case law from other jurisdictions, but even these cases are distinguishable from the instant case. First, in *Rexroat v. Thorell,* 89 Ill.2d 221, 60 Ill.Dec. 438, 433 N.E.2d 235, 238–39 (1982), the court did not find an easement over a road that had been vacated and blocked eighteen years before the plaintiffs bought their land. This is clearly different from the instant case, where the alley was dedicated and open for use when plaintiffs purchased their properties. Second, in *Keer v. Shaw,* No. 74AP–503, 1975 Ohio App. LEXIS 7364, *3–4 (March 18, 1975), the plaintiff failed to establish that an easement existed before the vacation of the public way. If, however, plaintiff had established the existence of a private easement, it would not have been affected by vacation of the alley. *See id.* at *4 (stating relevant statutory authority providing that if a public way is vacated, a right of way or easement of an abutting landowner shall not be impaired). Fi-

nally, *City of San Antonio v. Olivares,* 505 S.W.2d 526, 527 (Tex.1974), involved a dispute between a public and a private entity, which as noted above is a critical distinction in this type of case. Furthermore, the plaintiffs' access in *Olivares* was not impaired as it is here. *See id.* at 530.

**5.** Section 10–8–8.5 provides:

The action of the governing body vacating or narrowing a street or alley which has been dedicated to public use by the proprietor shall operate to the extent to which it is vacated or narrowed, upon the effective date of the vacating ordinance, as a revocation of the acceptance thereof, and the relinquishment of the city's fee therein by the governing body, *but the rights of way and easements therein if any, of any lot owner and the franchise rights of any public utility shall not be impaired thereby.* Utah Code Ann. § 10–8–8.5 (1999) (emphasis added).

owner has a private easement of ingress and egress to existing public highways. This private easement of access has been held to survive the abandonment or vacation of the public highway." (Citations omitted)).

¶ 24 Therefore, based on clearly established statutory and common law in Utah, the trial court was correct in holding that plaintiffs did not lose their easement when the city vacated the alley. Plaintiffs' easement survived the city's vacating ordinance and remains in force.

## II. GRANTING OF INJUNCTION

¶ 25 Defendants next argue that an injunction is not the appropriate remedy for plaintiffs' damages because plaintiffs suffered no irreparable harm and can be compensated by money damages. Defendants request that this court remand the case to determine money damages instead of affirming the injunction. Defendants rely on the assertion that plaintiffs still have primary access to their homes from Eleventh Avenue and have lost only the ability to transport large equipment through the alley, and argue that this does not constitute irreparable harm warranting an injunction under our holding in *Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 881 (Utah 1996) (stating that injunction is only appropriate "upon a showing of irreparable injury for which there is no adequate remedy at law").

 ¶ 26 On appellate review, a grant of injunction is overturned only upon showing that the district court abused its discretion or that the decision is clearly against the weight of evidence. *Id.*, This court has defined irreparable injury as " '[w]rongs of a repeated and continuing character, or which occasion damages that are estimated only by conjecture, and not by any accurate standard.... Irreparable injury justifying an injunction is that which cannot be adequately compensated in damages or for which damages cannot be compensable in money.' " *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 427–28 (Utah 1983) (quoting *Black's Law Dictionary* 707 (rev. 5th ed.1973)). De-

fendants point out that plaintiffs' real estate appraiser estimated that obstruction of the alley caused plaintiffs a loss of about $600 in property value, which is easily compensable in money.[6] Defendants, however, fail to recognize other harm that plaintiffs suffer, harm that clearly exists based on the undisputed facts in the record. For example, although plaintiffs relied on having access through the alley when they purchased their properties, plaintiffs are now restricted every time they wish to deliver heavy or large items to the rear of their homes. Plaintiffs' only alternative access to their backyards is up a 38 foot vertical rise in the front, and around the house through a narrow access way or through the house itself. Plaintiffs will suffer obvious inconvenience, extra cost, and hardship in order to proceed with plans such as repairing a roof, building a shed, storing a boat, or undertaking major landscaping. Plaintiff Scott Carrier would also be prevented from completing his planned backyard landscaping, which requires approximately twelve tons of large boulders to be delivered. It is clear that any amount to compensate plaintiffs for these losses would be based on conjecture of how plaintiffs may use the alley in the future and an estimate of how much money it would cost to carry out these conjectured plans without access through the alley. This harm is immeasurable in money damages and is of a continuing nature; therefore, it constitutes irreparable injury that qualifies for an injunction.

 ¶ 27 Defendants assert, however, that an injunction is not appropriate because their rock wall was completed eighteen months before plaintiffs filed suit and because defendants returned the remaining portion of the alley to productive use. Defendants rely on *Barboglio v. Gibson*, 61 Utah 314, 213 P. 385 (1923), in which this court denied injunctive relief and awarded money damages to a landowner whose property abutted a public road which was blocked by a railroad. *See* 61 Utah at 323, 213 P. at 388. In *Barboglio*, however, this court did

---

6. Although defendants refer to this appraisal in their pleadings below, they have not provided a citation to the record for it, nor have we been able to locate it. Therefore, we do not consider it on appeal. Moreover, even if the report was part of the record below, and its contents were accurate, its findings do not affect our analysis because it is undisputed that plaintiffs continue to suffer other harm not compensable in money.

not deny injunctive relief because the railroad improvements were well under way when the plaintiff demanded relief, as defendants claim. Rather, this court denied the injunction because the railroad was exercising a statutory right when it obstructed the road. *See* 61 Utah at 324, 213 P. at 389. This court further noted that the statute granting railways the right to take over public highways rendered a public service because of the importance of railroads. *See* 61 Utah at 321, 213 P. at 387. In the instant case, defendants have no statutory right to obstruct plaintiffs' easement across the alley, and although the rock wall benefits defendants, it does not render a public service. Therefore, *Barboglio* is inapplicable.

¶ 28 Contrary to defendants' assertions, we have held that an injunction is the appropriate remedy to prevent a private party from interfering with another private party's easement. *See Gillmor*, 850 P.2d at 438. Here, defendants, private parties, have obstructed plaintiffs' private easement of access through the alley and have substantially impaired plaintiffs' use of their easement. As noted above, plaintiffs have suffered irreparable and continuing harm that cannot be restored by money damages. Therefore, the district court did not abuse its discretion in granting plaintiffs injunctive relief.

### III. BALANCING OF EQUITIES

¶ 29 Defendants further argue that the district court should have applied a balancing of equities test, which requires a balancing of the parties' opposing interests. Under that test, defendants contend that their interest in keeping the wall far outweighs plaintiffs' interest in restoring the alley and thus any damages suffered by plaintiffs should be compensated by money.[7] We review the district court's decision not to apply a balancing of equities test for abuse of discretion. *Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1259 (Utah 1975).

¶ 30 Defendants argue that this case is like *Penelko, Inc. v. John Price Assocs., Inc.*, 642 P.2d 1229 (Utah 1982), in which this court

balanced the equities and found that an injunction was not appropriate. In *Penelko*, the defendant lessors violated a commercial lease by constructing a large driveway, landscaped island, and restaurant in a common parking area, causing a substantial reduction in revenue and patronage of the plaintiff's business. *Id.* at 1232. On appeal, this court held that it was not error to balance the equities in that case. *Id.* at 1235–36. We stated:

> The burden to [defendant] in removing the restaurant and the improvements incidental thereto would involve substantial economic waste; money damages would appear to be adequate to compensate [plaintiff] for violations of its lease, particularly in light of the fact that [plaintiff] has since the trial sold its theater building and its lease rights. Except in extraordinary circumstances, injunctive relief should not be granted where events have rendered such relief unnecessary or ineffectual.

*Id.* at 1236. In *Penelko*, the harm caused by the defendant's actions was measurable in past lost profits and an injunction would benefit no one because plaintiff no longer had an interest in the property and thus no future losses were possible. *See id.* In contrast, in this case, injunction affords plaintiffs substantial benefit. They will be able to complete their landscaping and repair their roofs as planned, and they will be able to use the alley to deliver heavy and awkwardly-sized items to their homes.

¶ 31 Moreover, the balancing of equities test is not appropriate here because the requirements for that test are not met. This court has set forth the circumstances in which a court may, at its discretion, apply a balancing of equities test instead of issuing a mandatory injunction. Under this test, the district court may *in its discretion* elect not to grant an injunction only "where an encroachment does not irreparably injure the plaintiff; was innocently made; the cost of removal would be disproportionate and oppressive compared to the benefits derived

---

7. It is regrettable that defendants did not apply a similar equitable balancing approach when they were determining where to build their wall, since

a matter of a few feet might have permitted plaintiffs access and secured their consent to a non-burdensome diminution of their access.

from it, and plaintiff can be compensated by damages." *Papanikolas Bros. Enters.*, 535 P.2d at 1259. Furthermore, "[t]he benefit of the doctrine of balancing the equities ... *is reserved for the innocent defendant,* who proceeds without knowledge or warning that he is encroaching upon another's property rights." *Id.* (emphasis added). If the defendant is not innocent, however, "equity may require [the property's] restoration, without regard for the relative inconveniences or hardships which may result from its removal." *Id.* In this case, it is undisputed that defendants did not innocently encroach on plaintiffs' property rights. Rather, defendants admit they had actual and repeated notification that the alley remained city property and that plaintiffs openly and repeatedly protested obstruction of the alley during the time of construction and long before the commencement of the construction of the wall. Even though defendants were informed they could use the property as they wished if and when the alley was vacated, they continued their construction and completed the rock wall six months before the vacation actually occurred. Thus, because defendants were not innocent in their encroachment, the district court did not abuse its discretion in declining to apply a balancing of equities test.[8]

## CONCLUSION

¶ 32 Defendants have failed to demonstrate that the district court erred in finding an easement in plaintiffs' favor over the entire width of the alley. Furthermore, defendants have not shown that the district court abused its discretion in granting an injunction ordering defendants to remove the obstructions from the alley. Finally, defendants have not shown that the district court abused its discretion in not applying a balancing of equities test and finding in defendants' favor. Therefore, the district court judgment is affirmed. Plaintiffs are entitled to a private easement

over the entire 15 foot width of the western 272 feet of the alley. Defendants are ordered to remove their rock wall and other obstructions from the alley and to restore the alley to its prior condition.

¶ 33 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM'S opinion.

---

8. Defendants assert that an injunction against them is inequitable for various reasons, including that (1) Salt Lake City officials represented that they could continue to build the wall; (2) the 1990 vacating ordinance was only procedurally flawed and should be considered valid; (3) plaintiffs' delay in claiming a private easement until after the wall was complete caused the problem and estops injunctive relief; (4) the cost of re-

moving the wall is excessive, while plaintiffs loss of property value is only $600. We are unable to find support for many of these assertions in the record that was before the trial court. However, regardless of whether these facts are true, we do not consider them because we conclude that use of the balancing of equities test is not appropriate in this case.