2014 UT App 78

**Lloyd SMITH and Laurie Smith, Plaintiffs, Appellants, and Cross-appellees,**

v.

**Timothy Vern SIMAS and Christy Leigh Simas, Defendants, Appellees, and Cross-appellants.**

No. 20100793–CA.

Court of Appeals of Utah.

April 10, 2014.

Steve S. Christensen, Craig L. Pankratz, and Samuel J. Sorensen, for Appellants and Cross-appellees.

Russell C. Fericks, Zachary E. Peterson, and Rafael A. Seminario, for Appellees and Cross-appellants.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judges GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

## Opinion

CHRISTIANSEN, Judge:

¶ 1 Lloyd and Laurie Smith filed suit against Timothy Vern and Christy Leigh Simas claiming that the Simases' house, constructed adjacent to the Smiths' house, violated the Declaration of Covenants, Conditions, and Restrictions recorded against the Simases' property. On appeal, the Smiths challenge the trial court's denial of their requests for injunctive relief, nominal damages, and attorney fees. The Simases cross-appeal the trial court's denial of their own request for attorney fees. We conclude that the trial court properly exercised its discretion to deny the Smiths' request for injunctive relief and to determine that neither party had prevailed below such that attorney fees were recoverable. We affirm.

## BACKGROUND

¶ 2 This case involves the construction of a house in the Sandstone Cove Subdivision (Sandstone Cove), a residential development located near Park City, Utah. All lots located within Sandstone Cove are subject to a Declaration of Covenants, Conditions, and Restrictions (the CC & Rs) recorded against the real property. The Smiths purchased an existing home on Lot 15 of Sandstone Cove. With their purchase, the Smiths received a right of first refusal on Lot 13, located directly adjacent to their home. Some time after moving in, the Smiths discovered that an offer to purchase Lot 13 had been made and that, pursuant to their right of first refusal, they could purchase Lot 13 for the same amount that had been offered. After reviewing the CC & Rs and concluding that any house built on Lot 13 would not impede their view, the Smiths decided not to exercise their right to purchase the lot.

¶ 3 Thereafter, the Simases purchased Lot 13 and began preparations to build a house. The Simases had previously built a house on Lot 16 of Sandstone Cove. Prior to obtaining a building permit for Lot 13, the Simases received approval for their project design from the Sandstone Cove homeowners association (the HOA). The Simases also submitted their proposed plans for construction of a house on Lot 13 to the Park City Planning Commission and Park City building officials. In April 2007, the Simases obtained a building permit from the Park City Building Department (the Department). The Simases began construction on Lot 13 shortly thereafter and began framing the house in June 2007.

¶ 4 On August 19, 2007, the Smiths submitted a written complaint to the Department alleging that the Simases' house exceeded the allowable floor area limit and violated a

requirement that the top floor of the house be no more than 50% as large as the level beneath it. The Smiths' complaint to the Department appeared to be based on restrictions contained in the Sandstone Cove plat map. Soon thereafter, the Smiths made complaints to the HOA that the Simases' house violated similar provisions in the CC & Rs. The president of the HOA replied by letter to the Smiths on September 15, indicating that the Simases' construction was in compliance with the CC & Rs.

¶ 5 On November 7, 2007, the Department issued a stop-work order on the Simases' construction based on an unrelated finding that "during construction the Limit of Disturbance (the 'LOD')—the working space allowed around the footprint of the house during construction—had been exceeded and some of the surrounding natural vegetation had been disturbed." In response, the Simases returned the LOD fence to the appropriate location and reseeded the damaged area. However, the Park City Chief Building Official refused to lift the stop-work order, having concluded that the Simases' house was in violation of a plat note that required the main level of the house to be no larger than 85% of the basement floor beneath it (the 85% Rule).

¶ 6 On December 11, 2007, the Smiths sent another letter to the HOA asserting that the Simases' house violated eight provisions of the CC & Rs. The HOA responded by directing its Architectural Committee and a consultant, the Highland Group, to review the Simases' architectural plans. On January 11, 2008, the Highland Group determined that the plans complied with the CC & Rs. Thereafter, the Smiths sent letters to the Park City Chief Building Official and other Park City officials alleging that the Simases' house violated restrictions in the plat map and city code. On April 15, 2008, Park City's interim planning director wrote a letter to the Smiths addressing their complaints and concluding that the Simases' house violated the 85% Rule. Park City accordingly maintained the stop-work order on the Simases' construction. In response to this determination, the Simases submitted revised architectural plans to the Department that utilized a crawl space underneath the driveway and garage to comply with the 85% Rule.

¶ 7 On April 29, 2008, after reviewing the revised plans, the Park City Chief Building Official determined that the Simases' amended plans satisfied the 85% Rule as set forth in the Sandstone Cove plat notes, and Park City lifted the stop-work order. The Smiths appealed to the Park City Planning Commission, which upheld the decision to lift the stop-work order. On June 24, 2008, the Smiths filed suit against the Simases, alleging breach of contract and seeking damages and injunctive relief on the ground that the Simases' house violated six provisions of the CC & Rs.

¶ 8 Trial began on July 7, 2010. Both parties submitted proposed jury instructions and special-verdict forms. The trial court raised several concerns with the parties' proposed special-verdict forms and worked with the parties to revise the form to address these concerns. The form ultimately submitted to the jury required the jury to determine whether any violation of the CC & Rs was material before it proceeded to a determination of damages. Both parties approved this special-verdict form. At the conclusion of the trial, the jury determined that the Simases breached three provisions of the CC & Rs: (1) section 6.3, requiring the "major axis and central mass of the [d]welling [to] be reasonably parallel to the natural contours of the [l]ot"; (2) section 6.8(e), incorporating the 85% Rule that required that the main floor of the house not exceed 85% of the basement floor; and (3) section 6.8(g), providing that "[n]o exterior wall may exceed 23' in height when measured from the eave overhang line to the lesser in elevations of either natural grade or finished grade." Despite finding these breaches of the CC & Rs, the jury determined, pursuant to the special-verdict form, that these breaches were not material. The jury therefore did not reach the issue of damages.

¶ 9 The Smiths then filed a posttrial motion seeking injunctive relief. The Smiths argued that the jury's determination as to materiality did not preclude the trial court from "issuing an injunction abating such nuisance." The court instructed the parties to

brief the issues and heard oral arguments, at the conclusion of which the court ruled that the Smiths "had not proven the factual or legal basis for entry of injunctive relief." On August 27, 2010, the trial court formally issued its Findings of Fact and Conclusions of Law and Judgment detailing the basis for its denial of the Smiths' request. The court also denied the Smiths' alternative request for nominal damages and refused to grant either party an award of attorney fees. Both parties appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 The Smiths argue that the trial court erred by denying their request for an injunction ordering the abatement of the violations of the CC & Rs.[1] "The availability of [an equitable] remedy is a legal conclusion that we review for correctness." *Ockey v. Lehmer*, 2008 UT 37, ¶ 42, 189 P.3d 51. However, the trial court's formulation and application of an equitable remedy is reviewed for an abuse of discretion. *Id.* And because "a trial court is in an 'advantaged position' to consider equities, we give 'considerable deference to [its] findings and judgment.'" *Hone v. Hone*, 2004 UT App 241, ¶ 10, 95 P.3d 1221 (alteration in original) (quoting *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976)).

¶ 11 The Smiths next contend that the special-verdict form improperly and prematurely cut off the jury's determination of damages. Because jury instructions are statements of the law applicable to a case, we review a trial court's instructions to the jury for correctness. *See State v. Powell*, 2007 UT 9, ¶ 11, 154 P.3d 788. However, we conclude that any error in the special-verdict form was invited, and we are therefore precluded from reviewing this issue. *See Pratt v. Nelson*, 2007 UT 41, ¶¶ 16–17, 164 P.3d 366.

¶ 12 The Smiths also argue that the trial court erred when it denied their request for nominal damages. Because the Smiths have not demonstrated that we should depart from the general rule that we "do not remand if the damages are only nominal," *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 43, 48 P.3d 895, we do not reach the merits of this claim.

¶ 13 Finally, the Smiths challenge the trial court's denial of attorney fees, arguing that they were entitled to attorney fees as the prevailing party below. Similarly, on cross-appeal, the Simases assert that they were the prevailing party below and were therefore entitled to attorney fees. We review for correctness a trial court's determination whether a prevailing party may recover its attorney fees. *Hartwig v. Johnsen*, 2008 UT 40, ¶ 6, 190 P.3d 1242. However, "[w]hether a party is the prevailing party in an action is a decision left to the sound discretion of the trial court," and we review the trial court's decision for an abuse of discretion. *Carlson Distrib. Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, ¶ 16, 95 P.3d 1171.

## ANALYSIS

### I. The Smiths' Request for an Injunction Ordering Abatement

¶ 14 The Smiths first argue that the trial court abused its discretion when, after the jury found that the Simases' house violated three provisions of the CC & Rs, the trial court denied the Smiths' request for an injunction ordering the abatement of the violations. In general, restrictive covenants operate to ensure uniformity of development and use of a residential subdivision and to give the owners of lots within such an area some degree of certainty as to future development. Because their use is a concomitant right of property ownership, covenants can be used for any purpose that is not illegal or

---

1. The Smiths alternatively argue that the trial court's equitable rulings are not supported by adequate findings. However, to preserve a challenge to the adequacy of a trial court's findings, a party must first raise that challenge in the trial court to give that court "an opportunity to correct the alleged error." *In re K.F.*, 2009 UT 4,

¶¶ 59–61, 201 P.3d 985 (citation and internal quotation marks omitted). Because the Smiths did not challenge the adequacy of the trial court's findings below, the Smiths' argument that the trial court's findings are inadequate is waived. *Id.* ¶ 60.

against public policy. *See* Restatement (Third) of Property (Servitudes) § 1.1 cmt. a (2000). In addition, "property owners who have purchased land in a subdivision, subject to a recorded set of covenants and conditions, have the right to enforce such restrictions through equitable relief against property owners who do not comply with the stated restrictions." *Fink v. Miller*, 896 P.2d 649, 652 (Utah Ct.App.1995). However, "[t]he right to an equitable remedy is an exceptional one, and absent statutory mandate, equitable relief should be granted only when a court determines that damages are inadequate and that equitable relief will result in more perfect and complete justice." *Hill v. Estate of Allred*, 2009 UT 28, ¶ 22, 216 P.3d 929 (citation and internal quotation marks omitted).

¶ 15 The Smiths argue that once they established that a valid restrictive covenant applied to the Simases' property and that the Simases' house violated that covenant, they were entitled to an injunction to abate the violation of the restrictive covenant. "Restrictive covenants that run with the land and encumber subdivision lots form a contract between subdivision property owners as a whole and individual lot owners...." *Swenson v. Erickson*, 2000 UT 16, ¶ 11, 998 P.2d 807. The parties do not dispute that the CC & Rs create a valid restrictive covenant on the Simases' property. And the Simases do not challenge the jury's finding that their house violated three provisions of the CC & Rs. Section 12.1 of the CC & Rs states that a "violation of the provisions of this Declaration is deemed to be a nuisance, and the Owner of the Property on which the violation occurs is responsible for the removal or abatement of the nuisance." Section 12.2 states that "[a]ny single or continuing violation of the covenants contained in this Declaration may be enjoined in an action brought" by a party empowered to enforce the CC & Rs. The parties disagree about whether these provisions of the CC & Rs provide for a mandatory injunction to abate any violation of the CC & Rs or merely permissive relief if monetary damages are inadequate to remedy a violation.

¶ 16 We need not determine whether these provisions of the CC & Rs purport to make an injunction mandatory, because we conclude that even if the injunction was mandatory under the CC & Rs, the trial court properly exercised its discretion in refusing to grant an injunction based on a balancing of the equities. Under appropriate circumstances, a trial court may elect to "apply a balancing of equities test instead of issuing a mandatory injunction." *Carrier v. Lindquist*, 2001 UT 105, ¶ 31, 37 P.3d 1112. Under this test, a trial court has discretion not to grant an injunction for violation of a restrictive covenant if the violation by the defendant was innocent, the cost of curing the violation would be disproportionate to the benefit realized, the injury to the plaintiff can be adequately compensated with damages, and the violation does not cause irreparable injury to the plaintiff. *Id.* Because the application of this doctrine is "reserved for the innocent defendant," the determination whether the defendant's violation was innocent is a threshold issue. *Id.* (emphasis omitted) (citation and internal quotation marks omitted).

A. The Simases' Innocence

¶ 17 The trial court determined that the Simases' violations of the CC & Rs were innocent because the Simases "complied with the proper HOA approval processes, and constructed their home in reliance on the approvals from this entity." An innocent defendant is one who "proceeds without knowledge or warning that he is encroaching upon another's property rights." *Id.* The Smiths contend that because the Simases were aware that the Smiths had complained to Park City and the HOA about the Simases construction, the Simases did not act innocently in constructing their house in violation of the CC & Rs. However, the Simases' awareness that the Smiths believed the Simases' house violated the CC & Rs does not demonstrate that the Simases knew or had warning that the house actually violated the CC & Rs. As the trial court observed, both the HOA and the Park City Planning Commission approved the initial construction plans for the Simases' house. In response to the Smiths' initial complaints about the con-

struction, the HOA determined that the house was in compliance with the CC & Rs. After receiving additional complaints from the Smiths, the HOA's architectural committee and a hired consultant reviewed the plans and confirmed that the Simases' house would not violate the CC & Rs. The Smiths also submitted complaints to Park City regarding the Simases' house. Park City's interim planning director ultimately concluded that the construction plans violated one of the plat notes, prompting the Simases to revise their architectural plans to bring the house into compliance. In sum, the evidence shows that the Simases obtained approval of their construction plans from the Department, the Park City Planning Commission, the HOA, the HOA's architectural committee, and the HOA's independent architect. Every entity that reviewed the plans ultimately found that the Simases' final house plans complied with the restrictions on the lot, and testimony at trial demonstrates that the Simases attempted to comply with the CC & Rs in good faith. Given these authoritative rejections of the Smiths' complaints during the planning and construction process, we are not convinced the trial court abused its discretion in determining that the Smiths' complaints about the Simases' house were insufficient to give the Simases "knowledge or warning that [they were] encroaching upon another's property rights" and that the Simases' violations were therefore innocent. *Id.*

### B. Disproportionate and Oppressive Cost of Removal

¶ 18 The trial court concluded that "the cost of now modifying the [Simases' house] in the manner sought by the [Smiths] is grossly disproportionate to any benefits that the [Smiths] would derive from such modifications." The trial court accepted as credible the Simases' testimony that modifying the house in the manner requested by the Smiths would not only cost well over $100,000 but would "result in essentially destroying the market value of the home." The trial court further determined that the Smiths' view would not be materially improved by their requested modification to the Simases' house. The trial court based this conclusion on trial exhibits and testimony demonstrating that

the Smiths' view was not substantially blocked by the Simases' house and on an appraisal expert's testimony that "no objectively discernable difference in fair market value for [the Smiths'] home would result from the modifications of [the Simases' house]." Moreover, the trial court determined that the Simases could bring their house into compliance with the CC & Rs without in any way improving the Smiths' view. Accordingly, the trial court concluded that the significant costs of modifying the Simases' house would greatly outweigh any economic benefit to the Smiths and would "result in economic waste." Given the trial court's findings, we cannot say the trial court abused its discretion in reaching this conclusion.

### C. Compensation with Damages

¶ 19 The trial court also determined that the harm to the Smiths could have been compensated with damages had they prevailed on their legal claim at trial. The Smiths' own expert testified at trial that damages could be quantified in the amount of $90,000 in lost property value. While the Smiths ultimately were not awarded any damages by the jury, that has no bearing on whether damages could have adequately compensated the Smiths had they prevailed. And the Smiths' argument that damages were insufficient because they were irreparably harmed is foreclosed by our analysis of the trial court's irreparable-harm determination. *See infra* ¶ 21. Accordingly, we conclude that the trial court's determination that damages would have adequately compensated the Smiths was within its discretion.

### D. Irreparable Harm

¶ 20 The trial court determined that the Smiths "would not suffer irreparable injury since the [Simases'] violations of the [CC & Rs were] not material and therefore not substantial." Generally, "[i]rreparable injury justifying an injunction is that which cannot be adequately compensated in damages or for which damages cannot be compensable in money." *Carrier,* 2001 UT 105, ¶ 26, 37 P.3d 1112. However, injury that is immaterial or otherwise insubstantial, nomi-

nal, slight, or technical does not constitute irreparable injury that would justify an injunction. *See* 43A C.J.S. *Injunctions* §§ 50, 59 (2004). And injunctive relief is not appropriate where the requested injunction would be ineffectual. *See Penelko, Inc. v. John Price Assocs., Inc.*, 642 P.2d 1229, 1236 (Utah 1982); 43A C.J.S. *Injunctions* § 89 (2004). Because the diminution in the Smiths' property value was compensable in damages, the only remaining question is whether the trial court abused its discretion in concluding that the effect on the Smiths' view did not constitute an irreparable injury.

¶ 21 The trial court's determination that the Smiths did not suffer an irreparable injury relied on numerous trial exhibit photographs showing that there is a 180–degree view of the Park City Valley from the Smiths' deck that is not substantially blocked by the Simases' house; the evidence that even removing a portion of the Simases' house, as requested by the Smiths, "would not materially improve the view from [the Smiths'] home"; and the Smiths' own testimony that despite the location of the Simases' house, they could "rearrange the furniture in their living room so that they could avail themselves of a different viewing angle." The trial court also relied on testimony from the Simases' appraisal expert that "no objectively discernible difference in fair market value for [the Smiths'] home would result from the modifications" that the Smiths requested and that the typical buyer would not notice a change to the Smiths' view if the Simases' house was modified. As the trial court observed, "the breaches of the CC &

Rs did not materially affect the Smiths' view, and ... the alleged violations do not irreparably injure—in fact, do not materially injure the [Smiths]." Given the advantaged position of the trial court to make findings about the nature of the harm suffered by the Smiths, we cannot say the trial court abused its discretion in concluding that the impairment of the Smiths' view by the Simases' house is immaterial and does not constitute irreparable injury.

¶ 22 The trial court determined that the Simases had innocently violated the CC & Rs, that the cost of remedying the violations was disproportionate to the benefit that would be conferred on the Smiths, and that the injury to the Smiths is not irreparable and could have been remedied with an award of damages had the Smiths prevailed at trial. Because we conclude that the trial court did not abuse its discretion in balancing the equities, we affirm its denial of the Smiths' request for an injunction.[2]

### II. The Special–Verdict Form

¶ 23 Next, the Smiths challenge the special-verdict form presented to the jury at trial. The trial court presented the jury with instructions and a special-verdict form requiring the jury to find that the violations of the CC & Rs were "material" before determining damages.[3] The jury determined that although the Simases' house violated the CC & Rs, those violations were not material. Thus, the jury did not award any damages to the Smiths. The Smiths argue that the trial court should have instructed the jury to determine an award of damages because the

---

**2.** The trial court also based its decision in part on the Smiths' delay in enforcing their rights under the CC & Rs. "The doctrine of laches is based upon [the] maxim that equity aids the vigilant and not those who slumber on their rights." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502 (alteration in original) (citation and internal quotation marks omitted). Laches is appropriately considered as part of the "broader, equity-based inquiry" undertaken in evaluating "whether an injunction for restrictive covenant violations or the like is proper." *Id.* ¶ 31. Accordingly, the trial court's determination that the Smiths unreasonably delayed asserting their rights under the CC & Rs to the detriment of the Simases—allowing construction to proceed for over a year after they came to believe the Simas-

es' house violated the CC & Rs before filing suit—also supports the trial court's determination that the balance of the equities favored denying the Smiths' request for an injunction.

**3.** Jury instruction number 31 directed the jury to "decide whether there was a material breach of the contract." It also provided a definition of "material" that mirrors the definition provided on the special-verdict form, which states, "A breach is 'material' if a party fails to perform an obligation that was important to fulfilling the purpose of the contract. A breach is not material if the party's failure was minor and could be fixed without difficulty, or if it did not materially affect the Smith[s'] view."

issue of whether the Simases' breach of the CC & Rs was material is not an element that a party must prove in order to recover monetary damages for breach of a covenant.

¶ 24 We do not reach the issue of whether the trial court correctly instructed the jury as to the materiality requirement because any error in the special-verdict form was invited by the Smiths. "The invited error doctrine prevents a party from taking advantage of an error committed at trial when that party led the trial court into committing the error." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 12, 163 P.3d 615 (citation and internal quotation marks omitted). "Affirmative representations that a party has no objection to the proceedings fall within the scope of the invited error doctrine because such representations reassure the trial court and encourage it to proceed without further consideration of the issues." *Id.* (citation and internal quotation marks omitted).

¶ 25 At the close of trial, before the jury was instructed, the parties were given an opportunity to review the special-verdict form that the trial court intended to give to the jury. When the trial court asked counsel for the Smiths if the Smiths had any objection to the proposed special-verdict form, counsel responded, "No, no objection." Through counsel, the Smiths affirmatively represented to the trial court that they had no objection to the special-verdict form that they now challenge on appeal. Accordingly, we conclude that any error in the special-verdict form was invited and do not address this argument further.

### III. Nominal Damages

¶ 26 The Smiths assert that even if the jury verdict awarding no actual damages was appropriate, the trial court erred in denying the Smiths' request for nominal damages. "Nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven." *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982). The Smiths argue that under *Holmes Development, LLC v. Cook*, if no damages accrue from the breach of a real property covenant the trial court must award nominal damages. *See* 2002 UT 38, ¶ 40, 48 P.3d 895. The Smiths therefore ask us to "remand to the trial court for a determination of nominal damages." However, our supreme court in *Holmes* concluded that where a breach of covenant is cured, no actual damages result from the breach. *Id.* Accordingly, the court held that "any recovery for breach of these covenants is *limited* to nominal damages," not that an award of nominal damages is required in such a case. *See id.* (emphasis added). Indeed, even though the plaintiff in *Holmes* had proved just such a "technical breach," *id.*, the court declined to remand for entry of an award of nominal damages to the plaintiff and instead affirmed the trial court's grant of summary judgment to the defendant, explaining that "we generally do not remand if the damages are only nominal," *id.* ¶ 43.

¶ 27 Here, the jury found that the Simases' house violated the CC & Rs but found the violations immaterial. The jury therefore did not find that any damage resulted from the Simases' technical breach of the CC & Rs. And while nominal damages may have been appropriately ordered below, we generally will not order a remand "if the damages are only nominal." *Id.* The Smiths have not addressed this general rule or demonstrated that we should depart from it. Accordingly, we affirm the trial court's denial of an award of nominal damages.

### IV. Attorney Fees

¶ 28 Last, the Smiths argue that the trial court erred in not naming them as the prevailing party after trial and in not awarding them attorney fees under an attorney-fee provision of the CC & Rs. The Smiths also request their attorney fees on appeal, arguing that because the trial court should have awarded attorney fees below, we may award attorney fees related to the appeal. On cross-appeal, the Simases contend that they were the prevailing party below, that the trial court erred in failing to award them attorney fees, and that this court "should remand for a determination of . . . attorney fees and costs both below and on appeal."

¶ 29 "Whether or not a party is the prevailing party is a question for the trial court, depending in large measure on the context of each case." *Carlson Distrib. Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, ¶ 37, 95 P.3d 1171. Relevant factors for the trial court's consideration include, but are not limited to

> (1) contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.

*R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. Although there is usually a clear prevailing party, the above considerations "will permit a case-by-case evaluation by the trial court, and flexibility to handle circumstances where both, or neither, parties may be considered to have prevailed." *Id.*

¶ 30 Section 12.2(a) of the CC & Rs (the Attorney Fee Provision) states, "In any action brought to enforce these covenants, the prevailing party shall be entitled to recover as part of its judgment all of the reasonable costs of enforcement, including attorneys fees and costs of court." The trial court determined that neither party was the prevailing party and denied both parties' requests for attorney fees under the Attorney Fee Provision. Specifically, the trial court found,

> The [Smiths] prevailed on the issue of breach of contract, since the jury determined that the Defendants violated the [CC & Rs]. However, [the Simases] prevailed on the issue of materiality and damages. The court determines that neither party is the prevailing party under [the Attorney Fee Provision]. Thus, the Court denies any award of attorney fees under [the Attorney Fee Provision], and denies any award of costs under Utah R. Civ. P. 54(d).

In the trial court's final judgment and order issued on November 17, 2010, the court reiterated that neither party was the prevailing party and that no attorney fees or costs would be awarded under the Attorney Fee Provision. However, the trial court did award the Smiths their attorney fees and costs related to a pretrial discovery dispute in the amount of $4,132.75.

¶ 31 On this record, it was within the trial court's discretion to determine that neither party prevailed and to consequently deny an award of attorney fees to both parties. *See id.* Given the circumstances present in this case, a determination of who is the "prevailing party" can be difficult. In a limited victory, the Smiths prevailed on the issue of breach of contract when the jury concluded that the Simases' house violated three provisions of the CC & Rs. The Simases, on the other hand, prevailed in the sense that the jury awarded no damages to the Smiths and the trial court denied the injunctive relief the Smiths sought. It was not unreasonable for the trial court to conclude that neither party had truly prevailed. Accordingly, we conclude that the trial court acted within its discretion in determining that neither party prevailed below and that, as a result, neither party was entitled to an award of attorney fees and costs.

¶ 32 Additionally, when an appellee successfully defends a judgment on appeal, an "award of fees on appeal requires both a fee award below and success in the appellate court." *Holladay Towne Ctr., LLC v. Brown Family Holdings, LC*, 2008 UT App 420, ¶ 25, 198 P.3d 990, *aff'd*, 2011 UT 9, 248 P.3d 452. Because the Simases were not awarded attorney fees below and the Smiths have not prevailed on appeal, we deny both parties' requests for an award of attorney fees incurred on appeal.

CONCLUSION

¶ 33 The trial court acted within its discretion in denying the Smiths' request for injunctive relief ordering abatement of the violations of the CC & Rs. The Smiths invited any error in the special-verdict form. We decline to remand this case for consideration of only nominal damages. The trial court's determination that neither party prevailed below was within its discretion, and its re-

sulting denial of attorney fees and costs was therefore proper.

¶ 34 Affirmed.