**2016 UT App 124**

# THE UTAH COURT OF APPEALS

SCHENK FAMILY LIMITED PARTNERSHIP,
Appellee,
*v.*
NORTHSHORE LIMITED PARTNERSHIP,
Appellant.

Opinion
No. 20141089-CA
Filed June 3, 2016

Second District Court, Ogden Department
The Honorable Noel S. Hyde
No. 070900119

Zane S. Froerer and Paul H. Johnson, Attorneys
for Appellant

Donald L. Dalton, Attorney for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY concurred.[1]

BENCH, Senior Judge:

¶1      NorthShore Limited Partnership appeals the trial court's
award of damages and attorney fees to Schenk Family Limited
Partnership (SFLP). We vacate the trial court's award and
remand for further proceedings consistent with this opinion.

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2 In September 2002, SFLP obtained mining property on the Great Salt Lake, which it leased to NorthShore. SFLP was induced to enter the Lease, in part, due to a related Supply Agreement between NorthShore's sister company, Mineral Resources International, Inc. (MRI), and Mitch Shaw and David Schenk.[2] Two separate sections of the Lease contained provisions indicating that "[i]n case of default by [NorthShore], all inventory and mining rights become the property of [SFLP]."[3]

¶3 In 2006, Shaw and Schenk agreed to terminate the Supply Agreement as consideration for NorthShore's promise to renegotiate the Lease. However, according to SFLP, NorthShore "refused to propose in good faith any terms for renegotiation of the Lease."

¶4 On February 22, 2007, SFLP, as a defendant in a case initiated by MRI, filed a third-party complaint against NorthShore, in which it alleged that "termination of the Supply Agreement, under [the] circumstances, has resulted in breach and/or termination of the [Lease]." SFLP subsequently amended

---

2. David Schenk is the son of SFLP's general partners.

3. There was some dispute in the trial court as to the definition of inventory and mining rights. NorthShore argued that mining rights and inventory should be defined as "the subsurface mining rights and the inventory of minerals contained below the surface of the leasehold property," which were owned by SFLP and leased to NorthShore. The trial court determined that the mining rights included a royalty agreement issued to NorthShore by the State of Utah, which permitted NorthShore to harvest mineral brines from the Great Salt Lake, and that inventory included NorthShore's inventory of mineral brines. In light of our holding on appeal, we need not resolve this issue.

its third-party complaint to add claims for breach based on NorthShore's failing to pay property taxes, missing rent payments, and refusing to allow SFLP to inspect the property. As a remedy, SFLP sought "a judicial declaration that the Lease has terminated with consequent legal effect, including [SFLP's] right of immediate possession and reversion of all inventory and mining rights." SFLP also sought "attorney's fees, legal expenses, and costs of Court."

¶5    On December 30, 2011, NorthShore filed a motion for partial summary judgment on SFLP's claim that NorthShore breached the Lease by failing to pay taxes and by missing rent payments and on SFLP's requested remedy of termination of the Lease. The trial court granted NorthShore's motion, dismissing the breach of contract claims challenged by the motion and determining that SFLP could not terminate the Lease as a remedy for the remaining breach of contract claims. But the court clarified that it was denying the motion to the extent that it sought summary judgment on SFLP's claim that it "is entitled to the remedy of all inventory and mining rights becoming the property of SFLP upon a default of the Lease Agreement by NorthShore."

¶6    SFLP's remaining third-party claims—that MRI's termination of the Supply Agreement and NorthShore's refusal to permit inspections constituted material breaches of the Lease—were tried as part of a larger trial involving related parties. The only issue tried to the jury on SFLP's claims against NorthShore was breach. A Special Verdict Form was submitted to the jury asking, "Do you find from a preponderance of the evidence that NorthShore Limited Partnership breached the Commercial Property Lease in the manner alleged by Schenk Family Limited [P]artnership?" The jury answered "Yes" to this question. The issue of damages arising from a breach by NorthShore was not submitted to the jury.

¶7 Following the trial, SFLP filed a Motion for Reversion of Inventory and Mining Rights and a Motion for Attorney's Fees. The trial court held a hearing on the motions, during which NorthShore argued that SFLP had never provided a calculation of damages or indicated that it expected the trial court to make a legal ruling on damages, that any claim for damages should have been put before the jury, and that the remedy provisions providing for a transfer of mining and inventory rights did not apply to the types of breach alleged by SFLP. The trial court rejected NorthShore's arguments and concluded that the jury's finding of breach was sufficient for the trial court to make a legal determination that the breach constituted a default under the Lease. The court further concluded that the parties bargained for a contractual remedy in the Lease, which provided for the transfer of mining and inventory rights in the event of default. Accordingly, the trial court ordered "that all inventory and mining rights of [NorthShore] on or appertaining to the property subject to the . . . Lease . . . are the property of [SFLP]." The trial court also found that SFLP was entitled to attorney fees under the Lease as the prevailing party and that SFLP's claimed fees were reasonable. Accordingly, the trial court ordered NorthShore to pay SFLP $28,687.50 in attorney fees. In ruling on various subsequent motions, the trial court eventually reduced the fee award to $23,864.40 and later augmented it by $17,381.10. NorthShore filed a notice of appeal, challenging the trial court's award of the inventory and mining rights and attorney fees.

ISSUES AND STANDARDS OF REVIEW

¶8 NorthShore argues that the trial court erred in interpreting the Lease to provide for forfeiture of the inventory and mining rights as a remedy for the breaches of contract found

by the jury.[4] "We review the interpretation of a contract for correctness." *Osguthorpe v. Wolf Mountain Resorts, LC*, 2013 UT 12, ¶ 7, 322 P.3d 620.

¶9      NorthShore also argues that SFLP was not entitled to attorney fees under the Lease, because it was not the prevailing party, and that the trial court's award of fees was not reasonable. "[W]hether a party is the prevailing party in an action is a decision left to the sound discretion of the trial court, and we review the trial court's decision for an abuse of discretion." *Smith v. Simas*, 2014 UT App 78, ¶ 13, 324 P.3d 667 (citation and internal quotation marks omitted). Likewise, "a trial court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *EDSA/Cloward, LLC v. Klibanoff*, 2008 UT App 284, ¶ 8, 192 P.3d 296 (citation and internal quotation marks omitted).

ANALYSIS

I. Interpretation of the Lease

¶10     NorthShore asserts that the trial court erred in interpreting the Lease. The court interpreted the Lease to allow the forfeiture of inventory and mining rights to SFLP as the remedy for any breach of the Lease, including the termination of

---

4. Because we agree with NorthShore that the trial court misinterpreted the remedy provisions of the Lease, we need not examine NorthShore's arguments that the jury's verdict was actually a general verdict precluding further consideration of damages; that the trial court erred in considering SFLP's request for damages post-trial and in refusing to give NorthShore a reasonable opportunity to defend against the claim; and that enforcing the remedy provisions was unconscionable.

the Supply Agreement and NorthShore's refusal to permit inspections. The forfeiture remedy[5] appears in two paragraphs of the Lease—one dealing with NorthShore's obligation to pay rent and the other dealing with NorthShore's obligation to pay taxes and maintain insurance coverage:

> If any payment becomes more than ten days past-due, such unpaid amounts shall bear interest from the due date to the date of payment at the rate of five percent (5%) of the outstanding balance per month. If any payment becomes more than thirty days late, Lessor may issue written Notice of Default to Lessee via certified mail and shall provide 30 days with which to cure. *In case of default by Lessee, all Inventory and mining rights become the property of Lessor.*
>
> . . . .
>
> If property taxes become delinquent, or Lessee fails to keep in force the required Insurance, Lessor may issue written Notice of Default to Lessee via certified mail and shall provide 30 days with which

---

5. There was some discussion in the trial court as to whether the remedy provision in this case was a forfeiture clause, a liquidated damages clause, or some combination of both. However, on appeal, the parties appear to agree that the remedy provision is a type of forfeiture clause. Even though the remedy provision did not provide for the forfeiture of the entire Lease, we agree that it is a forfeiture provision because it is "[a] contractual provision stating that, under certain circumstances, one party must forfeit something to the other." *Forfeiture Clause*, Black's Law Dictionary (9th ed. 2009).

to cure. *In case of default by Lessee all Inventory and mining rights become the property of Lessor.*

(Emphasis added.)

¶11    NorthShore urges us to construe the remedy provisions as applying only to defaults under those paragraphs—i.e., failure to pay rent and failure to pay taxes or keep insurance in force. SFLP, on the other hand, defends the trial court's determination that because there is "no language in the . . . Lease that would expressly limit this remedy only to a breach of the terms of the two specific paragraphs," the forfeiture remedy applied to all defaults[6] under the Lease.

¶12    "When interpreting a contract, we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (omission in original) (citation and internal quotation marks omitted). "[F]orfeitures are not favored in the law," and "forfeiture provisions will be strictly construed against the one who seeks to enforce them." *Richardson v. Hart*, 2009 UT App 387, ¶ 15, 223 P.3d 484 (citation and internal quotation marks omitted). Having reviewed the language of the Lease, we agree with NorthShore that the

---

6. For purposes of our analysis, we accept the trial court's determination that the breaches found by the jury could be classified as defaults. *Compare Default*, Black's Law Dictionary (9th ed. 2009) (defining "default" as a failure "to perform a contractual obligation"), *with id. Breach of Contract* (defining "breach of contract" as a "[v]iolation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance").

remedy provisions apply only to defaults based on nonpayment of rent, nonpayment of taxes, and failure to maintain insurance.

¶13 The structure of the remedy provisions indicates the parties' intent for them to apply only to specific, identified defaults—nonpayment of rent or taxes and failure to maintain insurance. Had the parties intended for the forfeiture remedy to apply to all types of default under the Lease, we would expect to see a single remedy provision pertaining to the entire Lease. By listing the remedy in specific paragraphs identifying particular types of default along with the method for providing notice of default and an opportunity to cure,[7] the parties indicated their intent for the remedy to apply specifically to the types of default outlined in those paragraphs. The fact that the parties included the default remedy in two separate provisions also supports this conclusion; had they intended for the remedy to apply to all types of default, there would have been no need to repeat the remedy in the paragraph relating to taxes and insurance.

¶14 Further, given our jurisprudence disfavoring forfeiture provisions, the parties' failure to explicitly indicate their intention for the forfeiture remedy to apply to all defaults under the Lease precludes us from interpreting the Lease as providing a contractual remedy for the breaches found by the jury in this case. Thus, SFLP's only remaining remedy for a breach based on the termination of the Supply Agreement or the failure to permit

---

7. The fact that the Lease does not outline any procedure for providing notice and an opportunity to cure with respect to other types of default further supports a narrow interpretation of the remedy provisions, since a party seeking to enforce a forfeiture provision must give the other party "notice of default and a reasonable period of time in which to cure the default before exercising a forfeiture provision." *See Johnston v. Austin*, 748 P.2d 1084, 1086–87 (Utah 1988).

inspections would have been actual monetary damages. But SFLP made no attempt to prove its damages at trial and instead relied exclusively on the forfeiture remedy provided in the Lease. Because the forfeiture remedy does not apply to the breaches committed by NorthShore, the trial court erred in awarding SFLP the inventory and mining rights.

## II. Attorney Fees

¶15    NorthShore next challenges the trial court's award of attorney fees to SFLP. The Lease provides that "[i]n the event of a dispute, the non-prevailing party shall pay the prevailing party's attorneys fees." NorthShore maintains that because SFLP failed to present evidence of damages at trial and its breach of contract claims did not entitle it to an award of the inventory and mining rights under the Lease, it could not be considered the prevailing party. *Cf. Smith v. Simas*, 2014 UT App 78, ¶¶ 29–31, 324 P.3d 667 (upholding a trial court's determination that there was no prevailing party where one party prevailed on the issue of breach but the other party prevailed on materiality and damages). It further challenges the reasonableness of the trial court's award.

¶16    "Whether or not a party is the prevailing party is a question for the trial court, depending in large measure on the context of each case." *Id.* ¶ 29 (citation and internal quotation marks omitted). Factors relevant to this determination may

> include, but are not limited to, (1) contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.

*R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. This standard permits a "case-by-case evaluation by the trial court, and flexibility to handle circumstances where both, or neither, parties may be considered to have prevailed." *Id.* The reasonableness of attorney fees may be based on a variety of factors, including

> the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988) (citation and internal quotation marks omitted).

¶17    Had the trial court determined, as we do on appeal, that the Lease did not permit SFLP to recover the inventory and mining rights as a remedy for the breaches found by the jury, *see supra* ¶ 14, the trial court's determination regarding who was the prevailing party and the extent to which SFLP's claimed fees were reasonable would likely have been affected. We therefore vacate the trial court's award of attorney fees. But because "the trial court is in a better position than we are as an appellate court to decide which party is the prevailing party," *R.T. Nielson*, 2001 UT 11, ¶ 25, and "to assess the reasonableness of the fees requested under a contract," *Foote v. Clark*, 962 P.2d 52, 56 (Utah 1998), we remand this case for the trial court to revisit its determination that SFLP was the prevailing party, in light of our holding in this case, and to adjust and re-enter the attorney fee award as appropriate.

CONCLUSION

¶18   We determine that the remedy provision in the Lease providing for a transfer of inventory and mining rights applied only to defaults based on nonpayment of rent or taxes or failure to maintain insurance. The trial court therefore erred in determining that SFLP was entitled to that remedy for breaches arising from the termination of the Supply Agreement and NorthShore's refusal to permit inspections. We therefore vacate the trial court's award of the inventory and mining rights and its award of attorney fees and remand for further proceedings consistent with this opinion.

———————