364 P.2d 1

W. H. PARK and C. T. Park, d/b/a Three-Way Builders Supply, a partnership, Plaintiffs and Respondents,

v.

Dewey JAMESON and Clara Jameson, Husband and Wife, Defendants and Appellants,

Thomas F. Spaulding, Defendant and Respondent.

No. 9267.

Supreme Court of Utah.

Aug. 22, 1961.

Christenson, Novak, Paulson & Taylor, Provo, Paul J. Merrill, Spanish Fork, for appellants.

Howard & Lewis, J. Rulon Morgan, Provo, for respondent.

McDONOUGH, Justice.

This action was brought by W. H. Park and C. T. Park, man and wife, doing business as Three-Way Builders Supply, against Dewey Jameson and Clara Jameson as owners of certain property in Spanish Fork, Utah, and against T. F. Spaulding, record lien holder, to foreclose a mechanic's lien which the plaintiffs, Parks, asserted against the property.

Plaintiffs, in a second cause of action, also sought attorney's fees alleging the Jamesons had signed certain invoices for the delivery of building materials to said premises, which invoices contained an agreement to pay attorney's fees in the event of suit for collection. Spaulding answered the complaint and filed a cross-claim against the Jamesons seeking to foreclose his mechanic's lien alleged to arise out of labor performed by him on the same property. Defendants, Jameson, answered the respective claims asserting that all claims had been paid in full under the terms of prior written and oral agreements between the parties and denied that either claimant had any valid lien against their property. The case was tried without a jury and upon conclusion of the evidence, Jamesons moved to dismiss both claims for the reason that both the Parks and Spaulding had not come into court with clean hands, by reason of their admitted participation in a fraud and subterfuge upon the Veterans Administration in the procuring of a mortgage loan on the same property for Jamesons. This motion was denied and upon conclusion of trial, judgment was awarded by the court in favor of Parks and Spaulding granting them foreclosure of their claimed liens and also awarding Parks their attorney's fees, $25 of which was held to constitute a lien upon the defendants' property. It is from this judgment and the rulings of the trial court during the proceedings that the defendants, Jameson, take this appeal. Hereafter the parties will be referred to as respondents or appellants or by name.

From the evidence introduced and admitted at trial the following facts appear. During the period under consideration, July of 1958 to January of 1959, the appellants were the owners of the property in question. In order to realize the construction of a dwelling thereon the ap-

pellant, Dewey Jameson, on the 18th day of July, 1958, entered into an oral agreement with the Parks whereby the latter were to deliver to the appellants' premises for use thereon, such building supplies and materials as might be ordered for the construction of the dwelling. The Parks were to be paid on or before the 10th day of the month for materials delivered during the previous month. Dewey Jameson, on approximately the same date also entered into an agreement with Spaulding whereby Spaulding was to do carpenter work and act generally in an advisory capacity in the construction of the dwelling at a rate of $3 per hour.

At the request of Dewey Jameson, and in order that he might secure a loan from the Veterans Administration in the amount of $10,850 with which to build the proposed dwelling, a written contract was signed on July 17, 1958, by the Jamesons as owners, Spaulding as the contractor and principal, and by W. H. Park as surety. A bond was also signed by Spaulding as contractor and principal and by W. H. Park as surety, wherein Park was bound to Jamesons and the Administrator of Veterans Affairs to guarantee *prompt and faithful performance* by Spaulding of the aforementioned written contract. At the time the written contract and the bond were signed it was mutually agreed that they were signed solely to enable Dewey Jameson to secure the loan and that those instruments would create no legal obligations or liabilities as between the parties.

Pursuant to the oral agreement between Jameson and the Parks, materials were delivered to the appellants' premises in the amount of $6,758.52. Of this amount the appellants paid $3,715 leaving a balance of $3,043.52. Under the agreement between Dewey Jameson and Spaulding, the latter performed labor over and above that for which he was paid in the amount of $448. Because of nonpayment of the balance due, the respondents Parks and Spaulding subsequently duly recorded their claims and notice of liens and in this action sought to foreclose their liens for the amounts which remained unpaid. Appellants, by way of defense, asserted the validity of the written contract, or in the alternative, such lack of clean hands on the part of the respondents Parks and Spaulding as would bar their claims.

The principal point advanced by appellant is that the court erred in denying their motion to dismiss for lack of clean hands. The appellants contend that because of the respondents' participation in the fraudulent contract they should now be denied the relief they seek under the oral agreements.

Although the clean hands doctrine states a fundamental principle of equity

jurisprudence [1] this principle is not, in its application, so much an absolute rule to be followed by the courts as it is a guide for determining whether, in a suit between two or more wrongdoers, relief should be granted. As stated in Walsh, Equity, sec. 353 (1930):

"* * * [T]he doctrine that the plaintiff must come into equity 'with clean hands' * * * turn[s] on the principle of reserved power of equity to deny relief where under the special facts justice demands that relief, usually given in such cases, be withheld."

Furthermore, in its application the doctrine has been subjected to many qualifications and exceptions, several of which are relevant to the case at bar.

In some instances courts in granting relief to an alleged wrongdoer have considered the fact that no injury resulted from his acts or omissions. In the case of Stockwell v. McAlvay [2] the court in entertaining a suit brought by a party guilty of attempted fraud with regard to the transaction upon which the suit was brought stated:

"Appellants argue that because V. E. Stockwell fraudulently attempted to prevent the satisfaction of the fraud judgment, the doctrine of clean hands applies, and respondents have no standing to seek relief against the fraud

* * * However, this contention is without merit * * * [for the reason] that appellants have not been injured by the acts complained of."

The reasoning in the Stockwell case is applicable to the facts under consideration in that the fraud allegedly practiced on the Veterans Administration was not shown to have injured the appellants in any way. In fact, the opposite is the case since it was the signing of the written contract which enabled the appellants to proceed with the construction of their dwelling and at a considerable savings. Furthermore, the alleged fraud on the Veterans Administration could not result in any case in damage to it. The Veterans Administration was in no way injured by the fraud attempted—if any such were intended. It had a first lien on the property which could be foreclosed at any time the owner defaulted. Had suit been brought on the performance bond, the parties thereto could not be heard to say that they were excused from its obligations by virtue of a secret agreement between the parties thereto.

The appellants in attempting to invoke the clean hands doctrine, in the instant case, to preclude the granting of relief to the respondents under the oral agreements, failed to take into consideration the fact that the misconduct in question related not to the oral agreements but rather to

1. 4 A.L.R. 44.

2. 10 Cal.2d 368, 74 P.2d 504, 506.

the invalid written contract. Nor were the equities between the respondents and the appellants affected by the alleged fraud on the Veterans Administration. The respondents fulfilled their part of the valid agreements completely. Only the appellants' part of the agreement remained unperformed. The denial of relief to the respondents under these circumstances would have the same effect as would a holding that the written contract was enforceable in spite of the parties' agreement to the contrary. We cannot so allow a party to benefit by his own wrong.

■ As materials were delivered by the plaintiffs to the defendants' premises, in accordance with their agreement, invoices containing an agreement to pay a reasonable attorney's fee in the event of suit for collection, were signed by the appellants. The respondents, Parks, on the basis of said agreements, claimed attorney's fees which were awarded them by the lower court in the amount of $591. Of this amount $25 was held to constitute a lien on the defendants' property by virtue of Section 38–1–18, Utah Code Annotated, 1953. The appellants now claim that the court erred in this award inasmuch as Section 38–1–18 provides that a court may, in granting foreclosure on a lien, award a reasonable attorney's fee, not to exceed $25. While the appellants' contention is correct insofar as an award of attorney's fees, constituting a lien on property involved in a foreclosure, are concerned,[3] a proper construction of Section 38–1–18 does not preclude the awarding of an attorney's fee greater than $25, where a written agreement so provides. 57 C.J.S. Mechanics' Liens § 353:

> "In the absence of an agreement of the parties therefor, the allowance of an attorney's fee depends entirely on statutory authority without which such an item forms no part of the proper recovery in these [lien foreclosures] proceedings. A mechanic's lien holder, however, may recover attorney's fees from his obligor where the contract between them provides therefor * * *"

But, the additional sum may not be awarded as a lien on the foreclosed premises.

■ The appellants' contention that the trial court erred in denying their motion to amend the written findings to conform to the findings as announced from the bench is without merit. The formal findings must prevail.[4]

The judgment is affirmed. Costs to respondents.

WADE, C. J., and HENRIOD, CALLISTER and CROCKETT, JJ., concur.

3. Olsen v. Kidman, 120 Utah 443, 235 P.2d 510.

4. McCollum v. Clothier, 121 Utah 311, 241 P.2d 468.