381 P.2d 95

In the Matter of the ESTATE of
Henry ASTILL.

George and Annetta ATKINSON,
Proponents and Appellants,

v.

Rose V. HANSEN et al., Contestants
and Respondents.

No. 9647.

Supreme Court of Utah.

May 3, 1963.

218

Patterson & Phillips, Ogden, for appellants.

George B. Handy, Ogden, for respondents.

CROCKETT, Justice.

Probate of the will of Henry Astill was rejected by the district court on the ground of lack of testamentary capacity. The proponents, brother-in-law, George Atkinson, and the latter's wife, Annetta, appeal.

Mr. Astill was a retired railroad engineer. He had lived in Sparks, Nevada, until the death of his wife in 1954, when he went to live with the Atkinsons at the outskirts of Ogden, Utah. Shortly thereafter he bought a small house next door to them on which he paid $5,000 down, leaving a balance of something in excess of $10,000. Henry lived either there or with the Atkinsons most of the time until he passed away in 1960. In February of that year he was committed to the Utah State Hospital. However, he was released and died in the Weber County Chronic Disease Hospital in October, 1960. He had been living alone in his house for over two years just prior to the fall of 1959, when he moved back in with the Atkinsons. It was within a month or two thereafter, on December 30, that the questioned will was made. It named the Atkinsons as the principal beneficiaries, but also made a number of other bequests. Interested survivors include two brothers-in-law, two sisters-in-law, a nephew and three nieces. His nephew, Walter C. Ewing, and his niece, Rose V. Hansen, contested the will on the ground of incompetency; and of undue influence allegedly exerted by the Atkinsons.

It is worthy of note that certain of these parties appear to have already enjoyed sub-

stantial beneficences from the deceased prior to his death. He had previously assigned his interest in his home to the Atkinsons. It was also shown that he had given them checks in the amounts of $2,800, $6,000 and $100, concerning which various explanations were offered, including: that the deceased had lost several thousand dollars gambling in Nevada which this money was used to repay; and Annetta said that the $6,000 check was a gift in appreciation of her caring for him and to prevent the niece, Rose Hansen, from getting the money. He had also advanced $3,000 to Rose's husband, Arlo Hansen.

The Atkinsons, on the one hand, and the contestants on the other, each make solemn averments that the other had very little interest in the deceased in his lifetime, leaving the old man practically without care or concern. But each accuses the other of swarming upon the carcass of his estate after his death like predatory vultures. There is no reason for us to disagree with these imprecations. We direct our attention to matters upon which evidence is in dispute and upon which the question of the competency of the deceased to make a will depends.

The Atkinsons and several other lay witnesses, themselves mostly people of advanced years, testified variously as to the mental condition of Henry Astill about the time of the will, December, 1959, to the effect that while he was aged and failing, he seemed mentally competent and not to be under undue influence from the Atkinsons. As to his mental condition this was also corroborated by Dr. Keith A. Stratford, who had attended Mr. Astill.

Significant evidence to the contrary, supporting the determination of the trial court, is found in the fact that on February 2, 1960, 34 days after the putative will was signed, George Atkinson himself verified and filed a petition for the appointment of a guardian, stating, inter alia:

"That said Henry Astill is 80 years of age; * * * is now and for more than five years last past has been ill in body and mind; * * * not been able unassisted to properly care for his property and himself; * * * is likely to be deceived or imposed upon by artful or designing persons * * *."

Upon this petition George Atkinson was granted letters of guardianship, and the deceased was committed to the Utah State Mental Hospital.

A few days before this petition was filed, on January 28, 1960, the deceased had been examined by Dr. Richard S. Iverson. As a part of his diagnostic procedure, he was advised by the Atkinsons that the deceased was failing in his faculties and had had difficulty in taking care of himself the past few years; and that "he had been acutely disturbed for many weeks." The doctor described him as a "confused elderly gentle-

man whose speech was incoherent * * * had poor muscular coordination; was not able to care for himself physically or dress himself adequately. He could not answer questions in a coherent manner * * * was emotionally very labile [unstable] and difficult to manage, easily agitated." The doctor's diagnosis further included that "he exhibited an organic confusional state in which he was not aware of the time, place and had difficulty in remembering things. He acted impulsively and was irrational."

In response to prying questions seeking to elicit that this condition may have come upon the deceased within the past month and that he might have been competent in December, the doctor gave his opinion that the condition described had not come on quickly, but that there had been deterioration over a considerable period of time.

■■■ Appellants make much of the fact that of the witnesses who testified, the greater number indicated the deceased's competency. It should be hardly necessary to point out that the preponderance of the evidence is not necessarily determined by the number of witnesses testifying for or against a proposition. It is also pertinent to observe that the trial judge was not

obliged to repose any special confidence in the opinions of lay witnesses as to the testator's capacity to make a will.[1] It was his prerogative to judge their credibility and to determine the weight and effect to be given their testimony. He commented on the various witnesses who testified for the proponents, pointing out that either because of advanced age, or lack of ability or opportunity to make what he termed "a penetrating judgment," or of interest directly or indirectly in the outcome, their testimony was less believable to him than that presented by the contestants.

■■■ We are quite aware that one may be something considerably less than bright of mind and yet be sufficiently competent to make a valid will.[2] Nevertheless, upon the basis of the evidence concerning the advanced age and senility of the deceased, we cannot say that there was no substantial evidence to support the finding that he lacked testamentary capacity.[3]

■■■ The further attack upon the judgment because of the trial court's oral statement relating to undue influence upon the deceased is without merit. The written documents, signed by the court, supersede the oral statement and become the findings

1. See In re Richards Estate, 5 Utah 2d 106, 297 P.2d 542.
2. See In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103, 1117; see also In re Richards Estate, footnote 1 above.
3. That a will contest is an action at law and findings will not be disturbed if supported by substantial evidence, see In re Lavelle's Estate, 122 Utah 253, 248 P.2d 372.

and judgment.[4] Affirmed. Costs to contestants (respondents).

HENRIOD, C. J., and McDONOUGH and CALLISTER, JJ., concur.

WADE, J., does not participate herein.

---

4. Park v. Jameson, 12 Utah 2d 141, 364 P.2d 1.

