2014 UT App 195

## THE UTAH COURT OF APPEALS

KELLY KARTCHNER,
Plaintiff and Appellee,
*v.*
KATHALYN KARTCHNER,
Defendant and Appellant.

Opinion
No. 20130014-CA
Filed August 14, 2014

Fourth District Court, American Fork Department
The Honorable Thomas Low
No. 110100815

Ben W. Lieberman, Attorney for Appellant

Kenneth A. Okazaki, Nathan D. Thomas, and
Stephen C. Clark, Attorneys for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.[1]

GREENWOOD, Senior Judge:

¶1      Kathalyn Kartchner (Wife) appeals from the trial court's
judgment in favor of Kelly Kartchner (Husband) on his claim of
fraud upon the court. We affirm.

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah Code
Jud. Admin. R. 11-201(6).

BACKGROUND[2]

¶2    Husband and Wife married in 1976. Wife dropped out of college shortly thereafter when she became pregnant, and Husband continued his studies and eventually completed medical school. In 1998, the couple began to have marital difficulties and separated. Wife filed for divorce. The parties executed a separation agreement that was filed with the court. As provided in the agreement, Husband gifted his interest in the marital home to Wife and paid Wife alimony and child support totaling $19,560 per month. Husband did so in order to provide long-term stability for Wife and their children. After two or three months of separation, the parties reconciled and Husband moved back into the home. Despite this reconciliation, Husband continued to make separate maintenance payments to Wife, and Wife used those funds to make the mortgage payments on the marital home, which remained in her name.

¶3    In 2006, Husband asked for a divorce. As part of their negotiations, Husband agreed to pay alimony to Wife even if Wife were to eventually remarry. Wife had a stipulation prepared that reflected this agreement (the 2006 Stipulation). The 2006 Stipulation required Husband to pay approximately $23,000 per month in total support. After all the children reached majority, Husband's support payments would decrease to $18,000 per month. This amount would continue as long as both Husband and Wife lived, but it would decrease if Wife or a future husband earned an income. Husband agreed to this provision because he felt guilty about seeking a divorce. The 2006 Stipulation also provided that Wife would retain the marital home. In April 2006, the parties signed the 2006 Stipulation, and Wife filed it with the court. The

---

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Bel Courtyard Invs., Inc. v. Wolfe*, 2013 UT App 217, ¶ 2 n.1, 310 P.3d 747 (citation and internal quotation marks omitted).

2006 Stipulation also stated that there were irreconcilable differences between Husband and Wife, but it did not describe their differences. Although Wife agreed to take the necessary actions to finalize the divorce, she did not do so.

¶4      Instead, Husband and Wife reconciled again in August 2006. The 2006 Stipulation remained in the court's file, but neither party made efforts to finalize the divorce. As was the parties' habit for the preceding eight years, Husband continued to make separate maintenance payments to Wife as outlined in the 1998 separation agreement. Husband also made the payments on a credit card that Wife used for household expenses.

¶5      In 2007, Wife began earning an income as a distributor for a multi-level marketing company. Wife never accounted to Husband for this income, but he was not unaware of it. Nevertheless, Husband's separate maintenance payments never decreased relative to Wife's income, and neither party contemplated that the payments should be reduced.

¶6      While the parties were on a Mediterranean cruise in 2009, Wife informed Husband that she wanted to proceed with the divorce. Immediately after the cruise, Husband went to Egypt for a volunteer medical mission from April 16 to May 4, 2009. When Husband returned home, Wife told him to stay in a hotel room she had reserved for him, where she had left an envelope for him containing a copy of proposed findings of fact and conclusions of law based on the parties' 2006 Stipulation. When Husband called and asked Wife about the document, Wife indicated that she intended it to be a starting point for discussion and that they needed to reach an agreement on the final terms of the divorce decree. However, Wife did not disclose that the documents had been submitted to the court for signature. Rather, she discussed their details with Husband as if she were negotiating with him, and the parties talked about whether they should finalize the divorce based on the terms of the 2006 Stipulation or whether to discard those terms and start over. Husband also expressed his

disagreement with the 2006 Stipulation's description of Husband's and Wife's respective incomes and with the requirement that Husband pay alimony even if Wife were to remarry. As an alternative, Husband proposed using a fixed percentage of his income as a basis for alimony, but Wife informed him that her attorney opined that the court would not approve such a term.

¶7    Contrary to her representations to Husband, Wife had already instructed her attorney to finalize the divorce based on the 2006 Stipulation. In fact, Wife's attorney had followed these instructions by filing the proposed findings of fact and conclusions of law and a decree of divorce with the court and had submitted them to the court for finalization on May 1, 2009—three days before Husband's return from Egypt. These proposed findings and decree were outdated and contained several inaccuracies.[3] For instance, the proposed findings incorrectly represented that Wife was not gainfully employed. In an apparent effort to cure this misrepresentation and to render the proposed findings more reflective of then-present facts, Wife abruptly resigned her position with her company. Wife never returned to work but continued to receive commissions throughout the ensuing months.

¶8    The court did not immediately sign Wife's proposed final documents. Had the court signed them soon after filing, as Wife intended, Husband would have been divorced, without notice, before returning from Egypt. Due to Wife's attorney's initial failure to file some required documents, he filed additional documents on June 24, 2009. That same day, he mailed a copy of a statement of compliance to Husband. This document, however, did not notify Husband that a divorce was being finalized based on the outdated

---

3. Also, these documents erroneously omitted the 2006 Stipulation's provision that alimony would be reduced by Wife's income and the income of any future husband. In the present action, the parties agreed that the final divorce decree should be reformed to include this provision.

2006 Stipulation. On July 22, 2009, Wife's attorney mailed a copy of a request to submit for decision to Husband. This document should have notified Husband that Wife was seeking to finalize the divorce, yet Husband did not immediately respond. Throughout the period of May to July 2009, Wife continued to feign negotiations with Husband, even as her attorney was trying to finalize the divorce. On July 28, 2009, the court entered the divorce decree (the 2009 Decree).

¶9     The next day, Husband learned that the parties' divorce had been finalized. Because Husband hoped to reconcile with Wife, Husband did not move for relief from the 2009 Decree. In early 2010, Husband consulted with an attorney who advised him that the court would not consider the case because more than ninety days had passed since the date of the 2009 Decree. During this period, Husband frequently told Wife that he did not agree with the 2009 Decree and that he would not pay alimony once she remarried. Husband continued to make payments to Wife, albeit not in the amounts prescribed by the 2009 Decree.[4]

¶10     In the summer of 2010, Husband learned that Wife was romantically involved with another man (Boyfriend). In June 2011, Husband tried to release himself from the obligation to pay alimony after Wife's remarriage by offering to pay off Boyfriend's debts. A month later, Wife announced her engagement to Boyfriend. In late September 2011, Wife married Boyfriend.

¶11     On October 26, 2011, Husband filed the present action against Wife, seeking equitable relief from the 2009 Decree and alleging that Wife perpetrated a fraud against Husband and upon the court. Husband sought reformation of the 2009 Decree and requested damages for the amount of alimony he had paid Wife. In response, Wife argued that Husband had forfeited his fraud claim

---

4. Wife never brought any enforcement actions against Husband alleging underpayment.

by failing to file a motion under rule 60(b) of the Utah Rules of Civil Procedure. Wife also raised the doctrine of laches as an affirmative defense.

¶12    After conducting a bench trial in October 2012, the trial court determined that the 2009 Decree was entered through fraud upon the court. The trial court therefore concluded that Husband was entitled to partial relief from certain provisions of the 2009 Decree. In granting that partial relief, the trial court reformed Husband's ongoing alimony obligation under the decree to require Husband to pay Wife $5,000 per month until December 2020 or until the date that the mortgage on Wife's home is satisfied, whichever is sooner. The trial court also ordered that Husband's alimony obligation would not be reduced by Wife's remarriage or by any income earned by Wife or her new husband. The trial court also applied laches and refused to relieve Husband of his alimony obligation that accrued during the time between the entry of the 2009 Decree and the filing of Husband's claim in October 2011.[5] Next, the trial court partially relieved Husband of the life insurance obligation in the 2009 Decree by reforming it to require Husband to maintain a $200,000 life insurance policy, with Wife named as a beneficiary, as long as his alimony obligation continues. The trial court ruled that all other terms of the 2009 Decree would remain essentially undisturbed. Wife appeals.


ISSUES AND STANDARDS OF REVIEW

¶13    On appeal, Wife argues that the trial court erred in granting relief to Husband on his fraud upon the court claim because Husband's carelessness and neglect should have barred his entire claim. The trial court rejected this argument based on its

---

5. However, the trial court did allow Husband's accrued obligation during this period to be reduced by the monthly earnings, if any, of Wife and her husband.

interpretation of rule 60(b) of the Utah Rules of Civil Procedure. "The trial court's interpretation of the rules of civil procedure presents a question of law which we review for correctness." *Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 42, 989 P.2d 1077.

¶14 Wife raises several other challenges to the trial court's rulings and reformation of the 2009 Decree. First, Wife argues that the trial court erred in its formulation and application of the elements of an action for fraud upon the court. Next, Wife contends that the trial court erred in ruling that the 2006 Stipulation was void. Finally, Wife claims that the trial court erred in reforming the life insurance provision of the 2009 Decree. "'The availability of [an equitable] remedy is a legal conclusion that we review for correctness.'" *Smith v. Simas*, 2014 UT App 78, ¶ 10, 324 P.3d 667 (alteration in original) (quoting *Ockey v. Lehmer*, 2008 UT 37, ¶ 42, 189 P.3d 51). "However, the trial court's formulation and application of an equitable remedy is reviewed for an abuse of discretion." *Id.*; *see also Collard v. Nagle Constr., Inc.*, 2006 UT 72, ¶ 13, 149 P.3d 348 ("When a district court fashions an equitable remedy, we review it to determine whether the district court abused its discretion."). "[B]ecause a trial court is in an 'advantaged position' to consider equities, we give 'considerable deference to [its] findings and judgment.'" *Hone v. Hone*, 2004 UT App 241, ¶ 5, 95 P.3d 1221 (second alteration in original) (quoting *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976)).

## ANALYSIS

### I. Husband's Failure to File a Rule 60(b) Motion

¶15 Wife argues that the trial court erred in allowing Husband to pursue his fraud upon the court claim because Husband forfeited his claim by failing to file a motion under rule 60(b) of the

Utah Rules of Civil Procedure.[6] Rule 60(b) permits a party to move for relief from a judgment for, among other reasons, "(1) mistake, inadvertence, surprise, or excusable neglect" or "(3) *fraud* (whether heretofore denominated intrinsic or extrinsic), *misrepresentation or other misconduct of an adverse party*." Utah R. Civ. P. 60(b) (emphasis added). When a motion is filed under subsections (1) or (3) of rule 60(b), "[t]he motion shall be made within a reasonable time," which means it shall be made "not more than 90 days after the judgment, order, or proceeding was entered or taken." *Id*.

¶16    Wife concedes that a plaintiff is not required to bring a rule 60(b) motion as a prerequisite to filing an independent action for fraud upon the court. Instead, Wife contends that a plaintiff may not maintain such an action if the failure to file a rule 60(b) motion is due to the plaintiff's own carelessness or neglect. Consequently, under Wife's argument, if Husband's failure to file a rule 60(b) motion for fraud was due to his own neglect, then he is barred from asserting an independent claim for fraud upon the court.

¶17    However, Wife's position is directly contradicted by the plain language of rule 60(b). The rule expressly states, "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court." *Id*.[7]

¶18    Wife's position is also contrary to case law from Utah's appellate courts. For instance, in *St. Pierre v. Edmonds*, 645 P.2d 615 (Utah 1982), a wife filed for divorce and the court entered a default

---

6. We refer to Husband's claim as an independent action for "fraud upon the court," consistent with rule 60(b)'s language, even though some cases use the term "fraud on the court" or "fraud against the court."

7. Although Wife's opening brief includes the entire text of rule 60(b) as a determinative rule, Wife otherwise fails to address this specific language in her opening brief.

judgment against the husband. *Id.* at 617. Ten days later, the husband moved to withdraw his earlier consent to the default judgment and filed additional documents, including a property settlement stipulation signed by both parties that substantially reduced the property awarded to the wife. *Id.* The court granted the divorce and divided the estate according to the terms of the stipulation. *Id.* Nearly two years later, the wife filed an independent action, raising common law claims based on her allegations that the husband used harassment and intimidation to force her to sign the stipulation. *Id.* After the trial court dismissed the wife's complaint for failure to state a claim upon which relief could be granted, the Utah Supreme Court recognized that the wife could not obtain relief under rule 60(b) because the time to file a motion to set aside the divorce decree had expired. *Id.* However, the supreme court explained that the wife was not barred from seeking relief from judgment because rule 60(b) "expressly recognizes and preserves the court's historic powers to relieve a party from the operations of an unconscionable judgment or order." *Id.* at 618. The supreme court further stated that "it has long been recognized by state and federal courts alike that an independent equitable action for relief from a prior judgment is available *in addition to* those remedies afforded under Rule 60(b)." *Id.* (emphasis added). As the Utah Supreme Court explained, rule 60(b) does not restrict the court from hearing "an independent common law action to set aside a judgment . . . for fraud . . . after the three-month period [for filing a rule 60(b) motion] has expired." *Id.* That is, nothing in rule 60(b)'s language indicates that a plaintiff's neglect in failing to move for relief under the rule precludes a plaintiff from later filing an independent action for fraud upon the court. Thus, even if a plaintiff did not exercise reasonable care and did not file a rule 60(b) motion, "[t]he time limitation in Rule 60(b) . . . does not control the filing of an independent action." *See id.* As a result, the supreme court reversed the trial court's dismissal of the wife's complaint. *Id.* at 618–20.

¶19   This court addressed similar circumstances in *Bayles v. Bayles*, 1999 UT App 128, 981 P.2d 403. There, a divorcing couple

signed a property settlement agreement that was incorporated into the court's divorce order. *Id.* ¶¶ 4–6. Five months later, the husband filed a petition for modification based on his allegations that before filing for divorce, the wife had removed assets from the business that they had operated together. *Id.* ¶ 7. The wife filed a motion to dismiss the petition, that the trial court denied. *Id.* ¶¶ 8–10. On interlocutory appeal, we explained that rule 60(b) is the appropriate avenue for relief from a judgment entered in a divorce proceeding based on an agreed-upon stipulation that was fraudulently procured. *Id.* ¶ 15. We acknowledged that "[r]ule 60(b) has stringent filing deadlines," *id.*, but we further explained that the expiration of the time for filing "does not limit the power of the court to entertain an independent action," *id.* ¶ 16 (citation and internal quotation marks omitted). We therefore held,

> If [the husband's] assertions prove true, [the husband] may be entitled to relief. This notwithstanding, [the husband] failed to timely file a Rule 60(b)(3) motion. Because a claim of fraud contemplated in the context of a divorce is not generally a proper basis for a petition to modify a divorce decree, [the husband's] only avenue for relief under the facts of this case is to file an independent action.

*Id.* ¶ 17.

¶20    As these cases indicate, Utah law does not bar a party who failed to file a rule 60(b) motion from later filing an independent fraud upon the court claim. Wife attempts to distinguish these cases by arguing that neither "addresses carelessness, neglect, and lack of diligence as a bar to independent-action relief." But in the face of rule 60(b)'s plain language that the rule does not limit the court's power to entertain an independent action for fraud upon the court, differences in factual scenarios do not weaken the

statements in *St. Pierre* and *Bayles* recognizing the availability of an independent action despite failure to file a rule 60(b) motion.[8]

¶21    Nevertheless, Wife further argues that affirming Husband's relief on his fraud upon the court claim under these circumstances would open the floodgates to collateral attacks on judgments and would render the ninety-day limitations period on rule 60(b)(3) motions meaningless. However, our supreme court has indicated that the time frame for filing an independent action for fraud upon the court is not unlimited. *See St. Pierre*, 645 P.2d at 618. "Rather, the doctrine of laches and other equitable principles determine the time within which the action must be brought." *Id.*; *see also In re Adoption of S.L.F.*, 2001 UT App 183, ¶ 22 n.4, 27 P.3d 583 ("[I]ndependent actions [as allowed under rule 60(b)] . . . are governed by equitable principles such as laches." (citing *Maertz v. Maertz*, 827 P.2d 259, 261 n.4 (Utah Ct. App. 1992))); *Maertz*, 827 P.2d at 261 n.4 ("Equitable principles such as laches, rather than the Rule 60(b) time constraints, would apply to limit an independent action."). Because independent actions for fraud upon the court are subject to equitable principles, we are not persuaded by Wife's

---

8. Wife also relies on *Redfield v. First National Bank*, 244 P. 210 (Utah 1925), arguing that it stands for the proposition that equitable relief is not available to those who, like Husband, lose alternative remedies, i.e., rule 60(b) relief, because of their own fault, neglect, or carelessness. *Redfield* states, "A court of equity does not interfere . . . unless the party complaining was, without his fault, deprived of his opportunity to present his defense in the original action on the merits." *Id*. at 215 (citation and internal quotation marks omitted). But as we have explained, rule 60(b) does not restrict the court's power to hear an independent action for fraud upon the court even if a party did not file a rule 60(b) motion. *See* Utah R. Civ. P. 60(b); *St. Pierre v. Edmonds*, 645 P.2d 615, 618 (Utah 1982). As a consequence, if a party files an independent action for fraud upon the court after failing to file a rule 60(b) motion, the trial court has discretion to determine if equitable principles justify allowing the action to proceed.

argument that the trial court's grant of relief to Husband under the facts of this case would expose all other judgments rendered in this state to wholesale attacks.

¶22 The parties do not dispute that Husband never filed a rule 60(b)(3) motion for fraud. Husband instead filed the present action for fraud upon the court more than two years after the 2009 Decree was entered. Although Husband was not as diligent in pursuing relief from the 2009 Decree as he could have been, Husband did not forfeit his claim by not filing a rule 60(b) motion. We therefore affirm the trial court's ruling that Husband's failure to invoke rule 60(b)(3) does not foreclose his ability to file an independent action for fraud upon the court.

## II. Unconscionability

¶23 Wife argues that the trial court applied an incorrect standard for fraud upon the court. Specifically, Wife argues that for Husband to be entitled to relief, the trial court was required to find that the 2009 Decree was substantively unconscionable. She further argues that the 2009 Decree was neither substantively nor procedurally unconscionable and that the trial court therefore erred in relieving Husband from some provisions of the 2009 Decree. In response, Husband argues that a finding of substantive unconscionability is not required and that the proper focus of a fraud upon the court claim is on the integrity of the judicial process itself.

¶24 In ruling on Husband's fraud upon the court claim, the trial court applied the standard articulated in *St. Pierre*, stating that "to establish his fraud on the court claim, [Husband] must establish 'an intentional act by a party in a divorce action which prevents the opposing party from making a full defense.'" (Quoting *St. Pierre v. Edmonds*, 645 P.2d 615, 619 (Utah 1982).) The trial court then determined that Husband met this burden by clear and convincing evidence. The trial court found that in 2009 Wife represented to the court that the 2006 Stipulation "remained viable" and so accurately

described the parties' agreement, thereby preventing Husband from making a full defense. In addition, the trial court found that Wife intentionally misled Husband. Wife led Husband to believe that the proposed findings of fact and conclusions of law, which were based on the 2006 Stipulation, were a starting point for negotiations even though she had already submitted the documents to the court for approval. The trial court found that as a result of the court's failure to sign these documents promptly, Wife "continue[d] the deception through the summer by pretending to negotiate with [Husband]." The trial court's order then indicated that even though Utah law may not require a finding that Wife had fraudulent intent, such a requirement would be met in this case.

¶25    In arguing that the trial court was required to find that the 2009 Decree was both procedurally and substantively unconscionable, Wife relies on two statements from our supreme court. Specifically, Wife points to language in *St. Pierre* that notes that the court holds the power "to relieve a party from the operations of an unconscionable judgment or order." *St. Pierre*, 645 P.2d at 618. Wife also directs us to our supreme court's explanation that "[a] fraud on the court is an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Chen v. Stewart*, 2005 UT 68, ¶ 40, 123 P.3d 416 (citation and internal quotation marks omitted). Wife asks us to interpret the supreme court's use of the word "unconscionable" in these contexts as a clear indication that a plaintiff asserting a fraud upon the court claim and seeking relief from an order must show that the order itself is substantively unconscionable. We do not agree that Utah law imposes such a requirement.

¶26    "[T]he term [fraud on the court] as used in obtaining relief from judgment . . . embrace[s] only that type of conduct which defiles the court itself, or fraud which . . . prevent[s] the judicial system from functioning in the customary manner of deciding cases presented in an impartial manner." *Kelley v. Kelley*, 2000 UT App 236, ¶ 28 n.10, 9 P.3d 171 (first and second alteration in

original) (citation and internal quotation marks omitted); *see also Black's Law Dictionary* 732 (9th ed. 2009) (defining "fraud on the court" as when "a lawyer's or party's misconduct [is] so serious that it undermines or is intended to undermine the integrity of the [judicial] proceeding"). In divorce proceedings, "a decree of divorce obtained by collusion of the parties, or by the suppression of the facts, or false testimony, is a fraud upon the court, and against public policy." *Karren v. Karren*, 69 P. 465, 466 (Utah 1902); *see also Kelley*, 2000 UT App 236, ¶ 57 (Jackson, J., dissenting) ("In Utah divorce proceedings, fraud, deceit, collusion, and perjury are wrongs against the state and a fraud upon the court . . . ." (citation and internal quotation marks omitted)). Thus, "[a]n intentional act by a party in a divorce action which prevents the opposing party from making a full defense amounts to fraud upon the opposing party, as well as upon justice." *St. Pierre*, 645 P.2d at 619 (citation and internal quotation marks omitted); *see also Kelley*, 2000 UT App 236, ¶ 28 n.10 (describing other examples of fraud upon the court justifying relief, including "such 'egregious misconduct' as bribery of a judge or jury, or fabrication of evidence by counsel[,] *or the prevention of an opposing party from fairly presenting his case*" (citations omitted)). Such actions "justif[y] a court in setting aside the decree so obtained." *St. Pierre*, 645 P.2d at 619 (citation and internal quotation marks omitted).

¶27    The trial court in this case applied the correct definition of fraud upon the court and did not err in requiring Husband to establish "'an intentional act by a party in a divorce action which prevents the opposing party from making a full defense.'" (Quoting *id*.) Further, the trial court did not err in determining that Husband established that Wife's conduct met this standard. Wife intentionally misrepresented to the court that the 2006 Stipulation accurately reflected the state of the parties' negotiations regarding their 2009 divorce proceedings. And by submitting the 2006 Stipulation to the court for signature while Husband was abroad and unable to contest it, Wife "suppress[ed] . . . facts" that Husband and Wife had reconciled after filing the 2006 Stipulation, *see Karren*, 69 P. at 466, and thereby "prevent[ed Husband] from

making a full defense," *see St. Pierre*, 645 P.2d at 619. Wife's conduct therefore constitutes a fraud upon the court that justified granting Husband relief from the 2009 Decree.[9]

¶28    In summary, the trial court did not err in concluding that Utah law does not require a plaintiff to demonstrate substantive unconscionability when asserting a claim for fraud upon the court. We therefore affirm the trial court's determination that Husband met his burden to establish that Wife perpetrated a fraud upon the court.

### III. Voidness of the 2006 Stipulation

¶29    Next, Wife contends that the trial court erred in determining that the 2006 Stipulation was void under *Lund v. Lund*, 315 P.2d 856 (Utah 1957). Wife argues that this determination was central to the trial court's conclusion that Wife committed fraud upon the court by misrepresenting to the court that the 2006 Stipulation remained viable.

¶30    In *Lund*, the trial court entered an interlocutory decree of divorce in February 1954. *Id.* at 857. Three months later, the husband and wife reconciled, "bestowing on each other all the privileges and benefits of [the marital] relationship." *Id.* However, the parties separated again in September 1955. *Id.* Thereafter, the trial court vacated the interlocutory decree, and the wife appealed. *Id.* In affirming the trial court, the Utah Supreme Court ruled that

---

9. Wife also argues that even if she misled Husband "in connection with the procedural status of the divorce case, no conduct was directed at the court itself" and that therefore she did not have the requisite fraudulent intent. The trial court acknowledged that Wife would likely have been ignorant of the impact of *Lund v. Lund*, 315 P.2d 856 (Utah 1957), discussed later in this opinion, *see infra* ¶¶ 29–34, but nevertheless concluded that Wife's actions supported a finding of fraudulent intent. We therefore are not persuaded by this argument.

"the trial court was right in holding that the original grounds which led to the entry of the interlocutory decree were not now available in the action because they had been condoned and forgiven." *Id.* at 858. The supreme court explained that the parties had no written agreement placing conditions on their reconciliation and noted that the parties' relationship during their reconciliation was not different from the relationship before any difficulties arose. *Id.* at 857–58. The court further reasoned,

> It would be a hard rule to hold that where the parties resume the marital relationship after the entry of the interlocutory decree, that regardless of how happy the parties may have been for six months, one, two or three years, that one party could hold the interlocutory decree over the head of the other and demand that the line be toed. With the realization that after the parties have become reconciled and have resumed the marital relationship, except in flagrant cases where fraud is present and good faith absent, the cause of action was dead and was no longer available to obtain a quick final decision, it is very probable that the parties might well be induced to try the harder to make a success of the marriage in order not to be required to start from scratch.

*Id.* at 858.

¶31   In this case, the trial court applied the reasoning from *Lund* to hold that the 2006 Stipulation was void and could no longer serve as the basis for the 2009 Decree. As the trial court explained, it was undisputed that the irreconcilable differences that led to Husband's request for a divorce and to the 2006 Stipulation were resolved in August 2006. The trial court also stated that it was undisputed that "an entirely different set of irreconcilable differences, raised by [Wife], arose in 2009." Because the 2006 differences were resolved when the parties reconciled, the trial court ruled that Wife could not substitute her differences in 2009

for Husband's differences in 2006. The trial court reasoned that, under *Lund*, "[Husband's] now-dormant desires for a divorce were 'no longer available to obtain a quick final decision' on [Wife's] desires for a divorce." (Quoting *id*.) As a result, "the original grounds which led to the [filing of the 2006 Stipulation] were not now available in the action because they had been condoned and forgiven." *See Lund*, 315 P.2d at 858.

¶32     Wife argues that *Lund* is inapplicable here for several reasons. First, Wife asserts that *Lund* does not apply because Husband made separate maintenance payments to Wife during their reconciliation from 2006 to 2009. Second, Wife contends that the reconciliation was conditional because Husband was operating with "two strikes" against him and Husband's support payments indicated that the parties' relationship during their reconciliation was different from their relationship before difficulties arose. Third, Wife argues that, unlike the vacated interlocutory decree in *Lund*, the 2006 Stipulation is a binding contract. Finally, similar to her rule 60(b) argument, Wife contends that the 2006 Stipulation cannot be deemed void because Husband never filed for relief from the 2006 Stipulation.

¶33     We are not persuaded that the trial court erred in applying *Lund* to the facts of this case. First, the trial court found that Husband had been paying support to Wife since 1998 and that this practice was not altered by the 2006 Stipulation. As a result, Husband's payments made during the parties' reconciliation do not necessarily establish that the parties were strictly complying with the terms of the 2006 Stipulation or otherwise had not reconciled. Second, despite Wife's claim that Husband had "two strikes" against him during the couple's reconciliation, Wife does not point us to any evidence of a "written agreement containing any condition upon which the reconciliation and condonation were to be voided," *see id.* at 857. We therefore agree with the trial court that, as in *Lund*, Husband and Wife had resolved their differences relating to the couple's 2006 separation and that the grounds supporting the 2006 Stipulation could not serve as the basis for the

2009 Decree. Next, we do not agree with Wife that the distinction between the interlocutory decree in *Lund* and the 2006 Stipulation here renders *Lund* inapplicable. We see no reason why a reconciliation sufficient to "condone[] and forgive[]" the grounds supporting an interlocutory decree would not be sufficient also to "condone[] and forgive[]" the grounds supporting a stipulation, *see id*. Last, we are not convinced that Husband's failure to move to withdraw the 2006 Stipulation renders relief unavailable in this case. Rather, we agree with Husband that "the gravamen of the holding in *Lund* was not the procedural steps the parties had taken, or not taken, in the time since the interlocutory decree was entered; it was whether the irreconcilable differences leading to the interlocutory decree had been condoned and forgiven." Similar to the parties in *Lund*, Husband and Wife condoned and forgave the irreconcilable differences leading to the 2006 Stipulation when they resumed their marital relationship.

¶34　We agree with the trial court that Husband and Wife's resolution of the differences that caused Husband to ask for a divorce and that served as the grounds for the 2006 Stipulation could not serve as the basis for the 2009 Decree. We therefore affirm the trial court's determination that the 2006 Stipulation was void under *Lund*.

IV. Reformation of the Life Insurance Provision

¶35　Finally, Wife contends that the trial court erred in reforming the life insurance provision of the 2009 Decree. In particular, Wife argues that the trial court erred in granting relief from the life insurance provision because Husband admitted on cross-examination that he removed Wife as the beneficiary of his life insurance policy in contravention of the 2009 Decree. Wife further argues that the trial court reformed the provision significantly to Husband's benefit and that the doctrine of unclean hands should have barred such relief. In contrast, Husband contends that the trial court's reformation of the life insurance provision was a proper exercise of the court's equitable discretion and was consistent with

the parties' longstanding agreement to ensure Wife's security in the marital home.

¶36 The 2009 Decree required Husband to "maintain an insurance policy on his life in the face amount of $2,000,000 . . . for the benefit of [Wife], or if she dies, the children of the parties, who shall be the sole and irrevocable beneficiaries thereof." At trial, Husband argued that this provision was inequitable and requested relief from that provision in its entirety. The trial court agreed with Husband that the life insurance provision was inequitable but only "to an extent." Thus, instead of relieving Husband from his life insurance obligation completely, the trial court reformed the 2009 Decree to require Husband to maintain life insurance in the amount of $200,000, with Wife named as beneficiary, as long as Husband's alimony obligation continues. The trial court reasoned that its reformation of the life insurance provision was "sufficient to ensure that the home can be paid for in the event of [Husband's] untimely demise."

¶37 "Reformation is an equitable remedy and because of the advantaged position of the trial court, we give considerable deference to [the trial court's] findings and judgment." *Bowen v. Bowen*, 2011 UT App 352, ¶ 14, 264 P.3d 233 (alteration in original) (citation and internal quotation marks omitted). "The doctrine of unclean hands expresses the principle that a party [who] comes into equity for relief . . . must show that his . . . conduct has been fair, equitable, and honest as to the particular controversy in issue." *Goggin v. Goggin*, 2013 UT 16, ¶ 60, 299 P.3d 1079 (alteration and omissions in original) (citation and internal quotation marks omitted). "In other words, a party will not be permitted to take advantage of his own wrongdoing or claim the benefit of his own fraud." *Id.* However, our supreme court "ha[s] never held [the doctrine of unclean hands] to be an absolute bar to recovery." *Parduhn v. Bennett*, 2005 UT 22, ¶ 42, 112 P.3d 495; *see also Park v. Jameson*, 364 P.2d 1, 3 (Utah 1961) ("Although the clean hands doctrine states a fundamental principle of equity jurisprudence this principle is not, in its application, so much an absolute rule to be

followed by the courts as it is a guide for determining whether, in a suit between two or more wrongdoers, relief should be granted." (footnote citation omitted)).

¶38    On appeal, Wife claims that Husband's unclean hands resulting from his alleged violation of the 2009 Decree barred the trial court from granting equitable relief to Husband. Although the trial court did not make any findings or undertake any analysis on the doctrine of unclean hands, the trial court apparently rejected Wife's argument by reforming the 2009 Decree.

¶39    We cannot conclude that the trial court exceeded its discretion in declining to invoke the unclean hands doctrine against Husband. *See Parduhn*, 2005 UT 22, ¶ 42 ("[A] district court's application of the unclean hands doctrine is reviewable only for abuse of discretion."). Instead, we are of the view that the trial court appropriately exercised its discretion in applying equitable principles and in granting partial relief to Husband. At trial, Husband sought relief from the life insurance provision altogether. However, because the trial court agreed with Husband that the provision was inequitable only "to an extent," it reduced the policy limit of the insurance that Husband was required to maintain. In light of the trial court's determination that Wife procured the 2009 Decree by committing a fraud upon the court, the trial court's reformation of the life insurance provision in this regard was a reasonable exercise of its discretion.

¶40    The trial court also exercised its discretion to reform other provisions of the 2009 Decree. In granting additional relief to Husband, the trial court reduced Husband's alimony obligation and required Husband to continue paying alimony until December 2020 or until the mortgage on the marital home is retired. The trial court also specifically applied the equitable doctrine of laches. *See generally Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502 (describing the elements of laches under Utah law as "(1) [t]he lack of diligence on the part of plaintiff and (2) [a]n injury to defendant owing to such lack of

diligence" (alterations in original) (citation and internal quotation marks omitted)). After finding that Husband showed a lack of diligence, the trial court determined that it would not be equitable to vacate the portions of the alimony obligations that accrued before Husband filed his complaint. Under the circumstances of this case, Wife has not persuaded us that the trial court exceeded its discretion in reforming the 2009 Decree.

¶41    In sum, we conclude that the trial court acted within its discretion in granting relief to Husband despite his alleged violation of the 2009 Decree. We also conclude that the trial court appropriately exercised its discretion in crafting its partial reformation of the 2009 Decree.

CONCLUSION

¶42    The trial court correctly concluded that Husband could pursue a fraud upon the court claim even after failing to file a rule 60(b)(3) motion. The trial court did not err in determining that Wife's conduct perpetrated a fraud upon the court, and the trial court did not err in ruling that the 2006 Stipulation was void and could not serve as the basis for the 2009 Decree. Finally, the trial court acted within its discretion in reforming portions of the 2009 Decree, including the life insurance provision.[10]

¶43    Affirmed.

───────────

10. Neither party requests an award of attorney fees, although Husband concludes that "[e]ach party should bear its own attorney's fees on appeal and [Husband] should be awarded his costs on appeal." Because we have affirmed the trial court's judgment, Husband is entitled to an award of costs. *See* Utah R. App. P. 34(a) ("[I]f a judgment or order is affirmed, costs shall be taxed against appellant unless otherwise ordered . . . .").